## ÆTNA LIFE INSURANCE COMPANY vs. MABBETT and another, impleaded with BELDEN.

In an action by an insurance company against the sureties on the bond of B., it agent, conditioned for his duly accounting for and paying over to the company, on demand, moneys received for it, &c., the answer alleged that the plaintiff took and received the bond in pursuance of a uniform custom by which all its

agents were required to give such bonds, fraudulently concealing from the sureties the fact that B., who then was and had for some time been its agent, was an that time a defaulter in the transaction of such business. *Held*, that the answer did not show a defense, there being no allegation that the bond was executed at the solicitation of the plaintiff, or any of its officers or agents, nor that there was any intercourse between them and the sureties, nor that the sureties had applied to them for information as to the course of dealing or state of accounts between the plaintiff and B.

APPEAL from the County Court of *Milwaukee* County.

*Belden* was an agent of the plaintiff at Milwaukee on and prior to November 15th, 1861, empowered to receive payment of premiums on policies, interest upon loans, &c. On that day *Mabbett* and *Lamberton*, as sureties, with *Belden*, as principal, executed a bond to the company in the sum of $1,000, conditioned for *Belden's* duly accounting to the company monthly, and whenever requested, for all its moneys or other property in his hands, and paying over all moneys received for it, after deducting his commissions. The complaint alleges that prior to August 3d, 1863, *Belden* had received various sums for the plaintiff, as such agent, which, after deducting his commissions, amounted to $1166, which he refused, on demand, to pay over; and the action is against him and his sureties on the bond, for the full amount of the penalty. The allegations in the answers of *Mabbett* and *Lamberton*, on which the questions discussed here arose, are stated in the opinion, *infra.*. The court ruled out evidence offered by said defendants to sustain those allegations, holding that they did not constitute a defense. Verdict and judgment for the amount claimed; and the defendants appealed.

*Cary & Pratt*, and *E. Mariner*, for appellants, cited Story's Eq, § 215; *Railton v. Matthews*, 10 Cl. & Fin., 934; *Owen v. Homan*, 25 E. L. & E., 1.

*By the Court*, DIXON, C. J. The case comes up on objections to evidence offered by the defendants, and turns upon the sufficiency of the defense set forth in the answers. The defense is an alleged fraudulent concealment of facts on the part of

the plaintiff touching the state of accounts between the plaintiff and defendant *Belden*, an agent employed by the plaintiff to receive and collect moneys at Milwaukee; by reason of which fraudulent concealment the defendants *Mabbett* and *Lamberton*, as sureties for *Belden*, were induced to execute and deliver to the plaintiff the bond in suit, conditioned that *Belden* should pay over and faithfully account to the plaintiff for all moneys which should come to his hands as such agent. The averment is (for the answers are in this respect the same), that the plaintiff "took and received the said bond" in pursuance of a uniform custom by which all its agents were required to give the same or a similar bond, fraudulently concealing from the sureties the fact that *Belden*, who then was and had previously acted as agent, was at that time a defaulter in the transaction of such business. This is the substance of the averment. It is not alleged that the bond was executed at the solicitation of the plaintiff, or of any of its officers or agents; nor that the plaintiff, its officers or agents, had any intercourse whatever with the sureties. Neither is it alleged that the sureties applied to the plaintiff, its officers or agents, for information as to the course of dealing or state of accounts between the plaintiff and *Belden*. The sole charge is, that the plaintiff "took and received" the bond, well knowing that *Belden* was in default, &c. This statement of facts gives rise to no relation of trust or confidence between the sureties and the plaintiff, upon which a fraudulent concealment in the law can be founded. The plaintiff has its office and place of business at Hartford, Connecticut. *Belden* and the sureties resided in Milwaukee. A just inference to be derived from the facts stated is, that *Belden*, being required by a general regulation of the company to furnish a bond with sureties, applied to *Mabbett* and *Lamberton*, as his friends and neighbors, to become such, and they did so at his request and trusting to what they knew of his responsibility and integrity. Under these circumstances, we perceive no obligation resting upon the company to

refuse to receive the bond, the very object of which was to guard against defaults on the part of its agent, or to notify the sureties that *Belden* was then behind in his remittances. Concealment, to be fraudulent and material, must be a concealment of something which the party concealing was bound to disclose; and in order that he may be so bound, there must in general, we may say invariably, exist some relation of trust and confidence between the immediate parties. The fraud consists in the breach of a trust or confidence justly reposed, and, in most if not all cases, the silence of the party must import as much as a direct affirmation, and must be deemed equivalent to it. 1 Story's Equity, § 214. Whether there be such relation of trust and confidence must, of course, depend very much on the circumstances of the particular case, and the course of dealing between the parties. Here it is obvious that there was none.

The counsel for the sureties quote and rely upon the first sentence in § 215 of Story's Equity, which is in these words: "Thus, if a party, taking a guaranty from a surety, conceals from him facts which go to increase his risk, and suffers him to enter into the contract under false impressions as to the real state of the facts, such a concealment will amount to a fraud, because the party is bound to make the disclosure; and the omission to make it, under such circumstances, is equivalent to an affirmation that the facts do not exist." The residue of the section is in these words: "So, if a party, knowing himself to be cheated by his clerk, and concealing the fact, applies for security, in such a manner and under such circumstances as holds the clerk out to others as one whom he considers a trustworthy person, and another person becomes his security, acting under the impression that the clerk is so considered by his employer, the contract of suretyship will be void; for the very silence, under such circumstances, becomes expressive of a trust and confidence held out to the public, equivalent to an affirmation." Here the plaintiff, not having been applied to

for information, cannot be said to have concealed anything from the sureties; nor to have suffered them to enter into the contract under false impressions as to the real state of the facts. For aught that was known to the company or its officers, *Belden*, who applied to the sureties for himself, and not for the company, may have disclosed to them the whole facts. If any presumption was to be indulged, it was that he did, rather than that he did not.

The law is correctly stated by BLACKBURN in *Lee v. Jones*, Eng. Exch. R., Nov. 1864 (4 Am. Law Reg., N. S., 487). He says: "It was decided in *The North British Ins. Co. v. Floyd* (10 Exch., 523), that the rule that all material circumstances known to the insured must be disclosed, is peculiar to contracts of insurance, and that it does not extend to contracts of guaranty; and I concur in this, which I think founded on principle as well as authority. It was pointed out by the Chief Baron in the argument of the present case, that a surety is in general a friend of the principal debtor, acting at his request and not at that of the creditor, and in ordinary cases it may be assumed that the surety obtains from the principal all the information he requires; and I think that great practical mischief would ensue, if the creditor were by law required to disclose everything material known to him, as in a case of insurance. If it were so, no creditor could rely upon a contract of guaranty, unless he communicated to the proposed sureties everything relating to his dealings with the principal to an extent which would, in the ordinary course of things, be so vexatious and annoying to the principal and his friends, the intended sureties, that such a rule would practically prohibit the obtaining of contracts of suretyship in matters of business. This is well pointed out by Lord CAMPBELL, in his judgment in *Hamilton v. Watson* (12 Clark & Finnelly, 109.) But I think, on authority and principle, that where the creditor describes to the proposed sureties the transaction proposed to be guarantied (as in general a creditor does), that description

amounts to a representation, or at least is evidence of a representation, that there is nothing in the transaction that might not naturally be expected to take place between the parties to a transaction such as that described; and if a representation to this effect is made to the intended surety by one who knows that there is something not naturally to be expected to take place between the parties to the transaction, and that this is unknown to the person to whom he makes the representation, and that if it were known to him he would not enter into the contract of suretyship, I think it is evidence of a fraudulent representation on his part." See likewise *Railton v. Matthews*, 10 Clark & Finnelly, 934; *Smith v. The Bank of Scotland*, 1 Dow., 292; and *Pidcock v. Bishop*, 3 B. & Cr., 605 [10 E. C. L., 197].

Nor did the plaintiff, "concealing the fact, apply for security." This point has been already sufficiently discussed.

On the whole, we are of opinion that the defense set forth in the answers is not within any decided principle, and cannot be sustained.

Judgment affirmed.