[No. 19247. Department One.—March 1, 1894.]

ANAHEIM UNION WATER COMPANY, RESPOND-
ENT, v. LEONARD PARKER ET AL., APPELLANTS.

CORPORATIONS—BOND OF SECRETARY—RETROSPECTIVE OPERATION.—Where
a bond given by a secretary of a corporation is not retrospective in its
terms it does not cover past delinquencies, and the sureties are not
liable for money converted by the secretary prior to its execution, but
the corporation is bound to show a conversion after the execution of the
bond, in order to charge the sureties.

ID.—ACTION UPON BOND—INSTRUCTION—QUESTION OF FACT—PROVINCE OF
JURY.—In an action upon such bond, it is a question of fact for the jury
to determine, under all the circumstances of the case, whether the secre-
tary was a defaulter at the time the bond was executed; and an instruc-
tion declaring to the jury that the sureties were liable for all moneys
collected by him and not turned over to the company at the date of the
bond, and assuming that he was not a defaulter in any sum prior to the
time of the execution of the bond, usurps the province of the jury.

ID.—CONTINUANCE OF SECRETARY IN OFFICE—SECOND BOND.—The liabil-
ity of the sureties upon a second bond given by a secretary who is con-
tinued in office is not affected by that fact, and the sureties upon the
second bond are not liable for money converted by the officer prior to
its execution.

ID.—COLLECTION OF MONEYS AFTER EXECUTION OF SECOND BOND—APPLICA-
TION OF PAYMENTS.—The company, in the absence of direct instructions
from the secretary, cannot apply moneys collected subsequently to the
execution of the second bond to the discharge of a liability arising under
the first bond, so as to render the sureties upon the second bond liable
for a delinquency, and in such case the law will not apply the payments
to the oldest debt.

ID.—TIME OF DEFALCATION—QUESTION OF FACT.—The question as to when
the defalcation occurred is one of fact, to be determined by the jury
upon all the circumstances of the case.

ID.—FAILURE TO PAY MONEY TO TREASURER.—A failure of the secretary to
pay over money to the treasurer forthwith may be merely a breach of
duty not amounting to a default, but it is an important element in de-
termining whether there has been a default that there has been a long
delay unaccounted for in the payment of the money, in violation of his
prescribed duty.

ID.—LIABILITY OF SURETIES—CHECK NOT ON BOOKS OF SECRETARY—CREDIT
IN BANK TO CORPORATION.—It is the fact of failure to pay over moneys
collected, and not the condition of the books, which fixes the liability
of the secretary's sureties, and where there is nothing to show that the
secretary ever drew out money credited in bank to the account of the
corporation, on account of a check received by the secretary, the fact
that there is no record of such check upon the books is not sufficient
to charge the sureties upon the secretary's bond.

ID.—EVIDENCE—ENTRIES IN BOOKS—PLEADING.—Where the complaint
states the amount of money held by the secretary at the date of the

bond, and the amount collected and received by him prior to a subsequent date, a portion of which sum he failed to turn over to the treasurer, the entries in the books made subsequent to that date are admissible only to show what had been collected prior thereto, but are not admissible to show what was collected subsequent to that date.

ID.—KNOWLEDGE OF DEFAULT OF SECRETARY—FAILURE OF DIRECTORS TO INFORM SURETIES—RELEASE OF SURETIES.—Though the officers of the company may have had reason to know and believe that the secretary had failed in his duty to pay over money to the treasurer of the company, and failed to communicate that fact to the sureties, yet unless there was fraud—an actual intent to conceal, or culpable negligence— the sureties would not be released from their liability.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Victor Montgomery*, for Appellants.

The court erred in instructing the jury that the defendants were liable on the bond for all the moneys collected by their principal, and not turned over to the company prior to the date of the execution of the bond. This would give the bond a retrospective operation which the law does not sanction. (*Haley* v. *Petty*, 42 Ark. 392; *State* v. *Churchill*, 48 Ark. 426; *Coons* v. *People*, 76 Ill. 383; *Stern* v. *People*, 96 Ill. 475; *Potter* v. *School Trustees*, 11 Ill. App. 280; *Dickens* v. *State*, 7 Blackf. 358; *Rogers* v. *State*, 99 Ind. 218; *Webster County* v. *Hutchinson*, 60 Iowa, 721; *Colyer* v. *Higgins*, 1 Duvall, 6; *Rochester* v. *Randall*, 105 Mass. 295; 7 Am. Rep. 519; *Scarborough* v. *Parker*, 53 Me. 252; *Paw Paw* v. *Eggleston*, 25 Mich. 36; *Detroit* v. *Webber*, 29 Mich. 24; *Pine County* v. *Willard*, 39 Minn. 125; *Montgomery* v. *Governor*, 8 Miss. 68; *Marney* v. *State*, 13 Mo. 7; *State* v. *Alsup*, 91 Mo. 172; *Commissioners* v. *McCormick*, 4 Mont. 115; *Van Sickel* v. *County of Buffalo.*, 13 Neb. 103; 42 Am. Rep. 753; *Jeffers* v. *Johnson*, 18 N. J. L. 382; *Bissell* v. *Saxton*, 66 N. Y. 55; *Board of Education* v. *Fonda*, 77 N. Y. 350; *Thomson* v. *McGregor*, 81 N. Y. 592; *Kellum* v. *Clark*, 97 N. Y. 390 *Fitts* v. *Hawkins*, 2 Hawks, 394; *Governor* v. *Lee*, 4 Dev.

& B. 457; *Richardson* v. *Smith,* 2 Jones, 8; *State* v. *Galbraith,* 65 N. C. 409; *State* v. *Orr,* 12 Lea, 725; *State* v. *Polk,* 14 Lea, 1; *Myers* v. *United States,* 1 McLean, 493; *Crawn* v. *Commonwealth,* 84 Va. 282; *Vivian* v. *Otis,* 24 Wis. 518; 1 Am. Rep. 199; *United States* v. *Giles,* 9 Cranch, 212; *Farrar* v. *United States,* 5 Pet. 373; *United States* v. *Boyd,* 15 Pet. 187; *United States* v. *Linn,* 2 McLean, 501.)   The company having reason to believe that the secretary had failed in his duty to it, in that he had not paid over the sums of money due to the treasurer, should not be permitted to recover upon the bond.   (*Fire etc. Assur. Co.* v. *Thompson,* 68 Cal. 208; Brandt on Suretyship and Guaranty, 1st ed., sec. 367; *Dinsmore* v. *Tidball,* 34 Ohio St. 418; *Smith* v. *Josselyn,* 40 Ohio St. 409; *Screwmen's Benevolent Assn.* v. *Smith,* 70 Tex. 168; *Howe Machine Co.* v. *Remington,* 82 N. Y. 121; *Franklin Bank* v. *Cooper,* 36 Me. 179.)

*Richard Melrose,* and *Edwin A. Meserve,* for Respondent.

If the secretary held money in his hands belonging to the company after the giving of the bond, his duty to pay it over was secured by the bond; or if he had personally appropriated the money previous to the time of the giving of the new bond, then the bondsmen are liable for the money subsequently collected and used by him to pay up this defalcation.   (Brandt on Suretyship and Guaranty, 547.)

P̧ATERSON, J.—It would be necessary, if we were to state the facts upon which all the points made by appellant are based, practically to copy the statement on motion for a new trial, as there are ninety-two assignments of error and specifications of insufficiency of the evidence based upon sixty-five pages of the record. With the exception of those hereinafter referred to, they are entirely without merit, although sufficiently plausible as they are stated to entail upon the court a great deal of unnecessary labor in passing upon them.

Briefly stated, this is the case: The defendant, Gardi-

ner, was secretary of the plaintiff (a corporation) from January 1, 1887, until February, 1891. On the fifteenth day of February, 1889, the defendants, Kraemer and Parker, as sureties, and Gardiner as principal, executed and delivered to plaintiff a bond for one thousand dollars, conditioned as follows: "Whereas, the above-bound principal, J. S. Gardiner, was, at a meeting of the board of directors of the Anaheim Union Water Company, a corporation, held on the second day of February, 1889, duly elected to the office of secretary of said corporation; now, therefore, the condition of this obligation is such that if the said J. S. Gardiner shall well and faithfully perform all official duties now required of him by the by-laws of such corporation, and shall well and faithfully execute and perform all the duties of such office of secretary as required by any law to be enacted by such corporation or its board of directors subsequently to the execution of this bond, then this obligation is to be void," etc.

It is claimed by the plaintiff that when this bond was executed, Gardiner held of the moneys he had collected for the company the sum of $880.37; that between the date of the execution of the bond and September 1, 1889, he held moneys of the plaintiff amounting to $16,073.52, including said $880.37, and that he paid in during that period $14,982.91, leaving a balance due the corporation of $1,091.61. Of this amount there is evidence tending to show that $1,000 was collected by Gardiner in August, 1889, on a note for that amount executed to one Beockman, but no record of the transaction appears in the books, except the order of the board authorizing the issuance of the note. Plaintiff recovered judgment in the court below against the sureties for $1,000 and costs of suit, and from that judgment and an order denying their motion for a new trial defendants have appealed.

The court gave to the jury the following instruction:

"If you find from the evidence that defendant J. S. Gardiner, on the sixteenth day of February, 1889, had,

*or should have had*, in his hands as secretary of plaintiff any moneys of plaintiff, and that the subsequent deposits and payments made by him to plaintiff and the treasurer of plaintiff, between said date and the first day of September, 1889 (not applied to the payment of other accounts, balances, and receipts), equalled such amount so found in his hands on said date, then, and in that event, the court instructs you to add the amounts found in his hands February 16, 1889, to the amounts received by him as secretary of plaintiff between said sixteenth day of February, 1889, and September 1, 1889, and deduct from this total amount the amount of payments made by him to the plaintiff and plaintiff's treasurer, as shown by the evidence.   The balance, if any, would be the balance in the hands of said Gardiner, as secretary of plaintiff, and would be the amount owing by him to plaintiff on said date, and for which balance of said amount, the court instructs you, you will render a verdict for the plaintiff, unless you also find that the sum has been subsequently paid."

This instruction was erroneous.   It declared to the jury that the sureties were liable for all moneys collected by Gardiner and not turned over to the company prior to February 16, 1889, and assumes that he was not a defaulter in any sum prior to the time of the execution of the bond in suit.   In this assumption the learned judge usurped the functions of the jury.   It was for the latter to determine, upon all the circumstances of the case, whether Gardiner was a defaulter at the time the bond was executed; and if he was, the sureties therein were not liable for his dereliction.   Where a second bond is executed, the sureties are not liable for money converted by the officer prior to its execution, and the plaintiffs are bound to show a conversion after the execution of the bond sued upon.   (*Williams* v. *State*, 89 Ind. 570; *Governor* v. *Robbins*, 7 Ala. 82; *Thompson* v. *Dickerson*, 22 Iowa, 360.)   In the last case cited the court said:  "This bond was not retrospective in its terms, and in such a case there can be no ground for

claiming that it covered past delinquencies. . . . . The
money, as far as shown, was not at the time in fact in
the principal's hands; and measuring the sureties' lia-
bility, as we are bound to do by strict law, we cannot
extend or alter the terms of their undertaking so as to
cover past delinquencies."

In *Rochester* v. *Randall*, 105 Mass. 295, 7 Am. Rep. 519,
the court said: "The cause of action against him arose
in 1862, when he rendered his account. . . . . We can-
not regard the defendant's bond as applying to it. . . . .
In *Myers* v. *United States*, 1 McLean, 493, it is said that
it would be doing great injustice to a surety to hold him
responsible for a default consummated before he became
bound; and in *Farrar* v. *United States*, 5 Pet. 373, it is
said that the bond should be made retrospective in its
language, if it is intended to cover past derelictions, and
all the cases cited for the defendants sustain similar
views." (See, also, *Potter* v. *Trustees*, 11 Bradw. 280;
*School District* v. *McDonald*, 39 Iowa, 564.) In *Board of
Education* v. *Fonda*, 77 N. Y. 358, the court said: "For
any sum paid to a principal before the execution of a
bond for official good conduct, there is but one ground
on which the sureties can be held to answer, and that
is that the principal still held the money in bank or
otherwise. If still in his hands, he was, up to that time,
bailee to the public; but, if he had become a debtor or
defaulter thereto, his offense was already consummated."
(*Farrar* v. *United States*, 5 Pet. 372.) It was said there
that if it was meant to cover past deeds, the bond should
have been made retrospective, and that the sureties had
not undertaken against his past misconduct. In *Vivian*
v. *Otis*, 24 Wis. 520, 1 Am. Rep. 199, the court said: "For
any moneys paid Otis prior to the execution of this bond,
and in his hands at the commencement of the second
term, the sureties therein became answerable to the
county. But, if he had already appropriated to his own
use any of those moneys, he had been guilty of a breach
of duty; it was a past delinquency or default for which
they never became responsible. How does the fact that

Otis was his own successor change the principle of law, or enlarge the liability of the sureties on the second bond? They did not undertake to make good any money which he had already misappropriated." In *Buffalo County* v. *Van Sickel*, 16 Neb. 363, the court said: "It is nowhere stated in the petition that the state treasurer, at any time during his said term covered by the bond sued on, had a dollar of the county money in his hands. . . . . As I understand it, when it is sought to hold either securities or principal for moneys which the principal made default of within a certain term, although he may have made a report or an official statement which may estop him, either alone or with his sureties, to deny that he was chargeable with the moneys, it must be charged in the pleading directly as a fact that he had the money. Clearly this must be so upon the theory of the above case, because we held that the sureties might deny that their principal had the money at the commencement of the term for which they were security, and that their liability would turn upon the proof of that fact, not upon the fact of their principal having stated, in a report or statement, that he had such an amount of the county's money in his hands; and, if it may be denied, and must be proved to enable the plaintiff to recover, it follows logically that it constitutes the material part of the cause of action to be alleged in the petition." In *Paw Paw* v. *Eggleston*, 25 Mich. 39, the court said: "Neither the principles involved in this case, nor their proper application, are in any way affected by the fact that the treasurer for the second year happened to be the same person who had held the office a year before."

It will be found that there is not an entire agreement in the decided cases respecting the liabilities of sureties on second bonds, but the rule stated is deduced from the weight of authority, and is the more rational one.

It is claimed by respondent that it was shown conclusively that the day after the giving of the bond Gardiner had in his hands $880.37 belonging to the company; that, thereafter, $1,000 was paid to him for the company, the

receipt of which is not shown on the books; that between February 15, 1889, and September 1, 1889, Gardiner frequently paid into the treasury of the company large sums of money, which must have been collected by him a long time prior thereto, and which was properly applied in payment of the first or oldest debt.

It is true the record shows that Gardiner paid to the treasurer $718.78 more than he had received subsequent to February 16th, and prior to September 1, 1889, so far as the books showed, but there is nothing to show the source from which these moneys were received. If they were, in fact, moneys collected by him prior to the execution of the bond, as claimed by the respondent, they would to the extent stated, $718.78, have gone to pay off the prior indebtedness, and the same is true if they were taken from the private funds of Gardiner. This, however, would not cure the error of the instruction, which covers the whole amount of the defalcation. If the money referred to was actually collected subsequent to February 16, 1889, we cannot agree with respondent in his contention that the company, at least in the absence of direct instructions from the secretary to apply it to the prior indebtedness, could so appropriate the money and render the defendant liable for the delinquency. The court in allowing this would be robbing Peter to pay Paul. In *Porter* v. *Stanley*, 47 Me. 515, it appeared that Stanley was collector of taxes for the years 1854, 1855, and 1856, and gave bonds with different sureties. As collector for the year 1854 he received moneys, and omitted to pay a portion of the same into the treasury. The selectmen appropriated from moneys received on the assessments for the years 1855, 1856, sufficient to balance the deficiency for the year 1854, without the request of Stanley, who nevertheless consented thereto. The court said: "The appropriations so made were manifestly inequitable, as respects the sureties, and, by the authorities cited for the plaintiffs, cannot be upheld. It is said, in the opinion of the court in the case of *United States* v. *January*, 7 Cranch,

572; 'It will be generally admitted that moneys arising, due and collected subsequently to the execution of the second bond, cannot be applied to the discharge of the first bond, without manifest injury to the surety in the second bond.'" (See, also, *Rogers* v. *State*, 99 Ind. 224; *Bryant* v. *Owen*, 1 Ga. 355.) In *Phipsburg* v. *Dickinson*, 78 Me. 459, it was claimed that, it appearing that the collector had paid over during the three years more than he had collected on the assessment for the first year, the law presumes, in the absence of proof, that he performed his legal duty, and paid over all that he collected for that year. The court said: " But the legal presumption is just as strong as to each of the other years, and, as he could not legally appropriate as against his sureties what he received on one assessment in payment of what he received on another, the law will not apply the payments to the oldest debt." Speaking of presumptions in the absence of proof, the supreme court of Illinois, in *Trustees* v. *Smith*, 88 Ill. 185, said: " It is insisted that it is the presumption that the amount was then on hand at the expiration of the first term. We do not admit that. The defalcation is established, but the time at which it occurred, whether during the first term or subsequent to the reappointment, does not appear, and we do not see why it may not as well be presumed that the treasurer misappropriated the money during the time of his first term of office as during the time which elapsed after his reappointment." The question as to when the defalcation occurred is one of fact, to be determined by the jury upon all the circumstances of the case. In *Bockenstedt* v. *Perkins*, 73 Iowa, 25, the court held that evidence that a guardian had received money only six days previous to the giving of the bond was admissible, as tending to show, or raise a presumption, that he had it when the bond was executed. In the case at bar there is evidence tending to show that the $880.37 referred to was collected at least six months prior to the time of the execution of the bond (pp. 87–93.) The by-laws required the secretary of the com-

pany to "keep an accurate record of the proceedings of such meetings, . . . . receive and collect all moneys due or payable to the company, and pay the same to the treasurer forthwith, taking his receipt therefor." The jury might fairly have inferred from this and all circumstances that he had converted the money to his own use prior to the giving of the bond. At least we cannot say there is no evidence to induce such a conclusion. Cases cited in which the delinquent officers were public officials, and entitled to retain the moneys collected until the end of the term, are not in point. Here it was the duty of the secretary to turn the money over to the treasurer immediately, or within a reasonable time at least after he received it. The provision requiring the secretary to turn over the money forthwith was not an idle one, and the sureties had the right to assume that the board would enforce it. If it had been faithfully observed, the question in this case would never have arisen. In *Street* v. *Laurens*, 5 Rich. Eq. 251, the court said: "But, admitting the contruction of the decree of 1836 contended for on behalf of the appellants, and that the master was not ordered to invest this fund by that decree, this court is of the opinion that the master committed a default in not depositing the fund in bank, as required by the act of 1840. And this default having been committed during those official terms for which Mrs. Laurens was his surety, she becomes on that account liable." We do not deem it necessary to indorse this proposition to the extent stated. A failure to pay over money to the treasurer forthwith, or at any other specific time, may be merely a breach of duty, not amounting to a default, but it is certainly an important element in determining whether there has been a default, that there has been a long delay unaccounted for in the payment of the money, in violation of some statutory provision or by-law.

It is claimed by the appellant that the evidence does not support the verdict, and, as we understand the testimony of the experts and that of the plaintiff's treas-

urer, the secretary actually turned over to the plaintiff all of the moneys collected by him except $91.61. Assuming that he had in his hands at the time of the execution of the bond $880.37, he collected altogether "15,073.52, and turned over $14.982.91, *as shown by the books.* This would leave a balance of $90.61 as stated before, but it is claimed that as there is no record in the books of the Beockman check for $1,000 it is apparent that he failed to turn over $1,091.61. It is the fact, however, and not the condition of the books, which fixes the liability of these defendants. It is in evidence and undisputed, as we understand the record, that the check of Beockman was paid by the bank of Anaheim and credited to the account of the plaintiff (p. 85). There is nothing to show that the secretary ever drew the money out. The thousand dollars may still be on deposit in the bank. There is nothing to show the condition of the plaintiff's account at the bank. Furthermore, the secretary himself testified that of the $1,152.42 receipted for by him on August 10, 1889, this identical $1,000 was a part. The defendants introduced a deposit tag for money deposited in the bank of Anaheim " by the Anaheim Union Water Company, per J. S. Gardiner, secretary, August 7, 1889," $1,000, and it was stipulated by counsel "that said tag was the original, showing the deposit of the Beockman check." Thereafter the treasurer was called in rebuttal and testified, when shown said tag and his receipt for $1,152.40 of August 10th, that the thousand dollars mentioned in the tag " was a portion of that receipt," and stated that at the time the receipt was given Dr. Gardiner handed him a piece of brown paper containing memoranda showing the several items which went to make up the $1,152.40 mentioned in the receipt.

The court erred in admitting testimony as to the amounts actually received and paid in by Gardiner between September 1 and October 5, 1889. The complaint charges that the defendant, Gardiner, as secre-

tary, had in his hands $880.37 on the sixteenth day of February, 1889, the property of the plaintiff, and subsequently thereto, and prior to the first day of September, collected and received for plaintiff the sum of $15,193.15, aggregating the sum of $16,073.52, of which sum so received by him prior to said first day of September, he turned over to plaintiff the total sum of $14,982.91, leaving a balance on said first day of September of $1,091.61. The inquiry, therefore, should have been confined to the period stated. The entries in the books made subsequent to September 1st might have been admissible in evidence to show how much was collected between the dates named, because the testimony shows that entries were made six months after the transactions; that the books did not balance; that the records were kept on loose papers, one entry of $14,000 having been made on the back of a photograph, and one of the witnesses testified that no one could tell from the books how much was received subsequent to February 16, 1889, and that the correct balance might be one dollar or it might be $10,000. The records being in this condition, as stated before, the books may have been admissible as evidence of what had been collected prior to September 1st, but they were not admissible to show what was collected subsequently to that date.

We see no merit in any other exception. The exception to the refusal of the court to give instruction No. 11, which is the only one other than the one above referred to worthy of notice, is not well taken. The officers of the company may have had "reason to know and believe that the said Gardiner had failed in his duty to pay, in that he had failed to pay over the said sum to the treasurer of said company," and failed to communicate the fact to the sureties, yet, unless there was fraud—an actual intent to conceal, or culpable negligence—the sureties would not be released from their liability. (*Guardian Fire etc. Assur. Co.* v. *Thompson,* 68 Cal. 208; *Bostwick* v. *Van Voorhis,* 91 N. Y. 357; *Roper*

v. *Trustees,* 91 Ill. 519; *Ætna Life Ins. Co.* v. *Mabbett,* 18 Wis. 667; *Charlotte etc. Railroad Co.* v. *Gow,* 59 Ga. 694; 27 Am. Rep. 403.)

The judgment and order are reversed, and the cause remanded for a new trial.

HARRISON, J., and GAROUTTE, J., concurred.