[Sac. No. 4116. In Bank.—October 1, 1928.]

TURLOCK IRRIGATION DISTRICT (a Public Corporation), Respondent, v. J. H. EDWARDS et al., Appellants.

[Sac. No. 3957. In Bank.—October 1, 1928.]

TURLOCK IRRIGATION DISTRICT (a Public Corporation), Appellant, v. JACOB H. EDWARDS et al., Respondents.

A. J. Carlson and Stanley Pedder for Appellants in Sac. No. 4116.

P. H. Griffin and Boone & Boone for Respondent in Sac. No. 4116.

P. H. Griffin and Griffin, Boone & Boone for Appellant in Sac. No. 3957.

R. R. Fowler, W. J. Brown, H. L. Chamberlain and R. P. Wisecarver for Respondents in Sac. No. 3957.

THE COURT.—The above-entitled actions, consolidated for purposes of trial and appeal, were brought to recover money alleged to have been misappropriated by the defendant Edwards while serving simultaneously as tax collector and treasurer, respectively, of the plaintiff irrigation district. That there existed a shortage of $18,612.58, the amount sued for in each complaint, in Edwards' accounts at the time of his resignation from these offices in September, 1923, is not now disputed. So far as the defendant Edwards himself is concerned, both offices having been united in him, it is a matter of little importance in what capacity he is chargeable. But as he was required to furnish two official bonds with sureties, one for the faithful performance of his duties as tax collector and the other for a similar performance of his duties as treasurer, and as the sureties for him in one capacity differed from those who are sureties in the other, justice to the sureties requires that he should not be liable on his bond as tax collector for breaches of duty committed as treasurer and *vice versa*. Upon the conclusion of the joint trial, at which practically the only testimony adduced was that of a certified public accountant who had audited Edwards' books, the court below granted a motion for nonsuit as to the surety on Edwards' bond as treasurer and thereafter found, upon the evidence, that the

entire defalcation had occurred in the office of tax collector. From the judgment of dismissal following upon the granting of the nonsuit to the treasurer's surety the irrigation district has appealed, while the sureties on Edwards' bond as tax collector have appealed from the judgment placing the whole burden of his peculations upon them. These appeals, as stated, have been consolidated. The sureties on Edwards' bond as tax collector concede that as tax collector he was in default at the time of his resignation to the extent of $2,278.35, for which they, as sureties on his bond in that capacity, are liable. It is urged, however, that the trial court erred in entering judgment against them for the remaining sum of $16,334.23, which, it is asserted, was misappropriated by Edwards as treasurer, thus placing responsibility therefor on his surety in that capacity. The surety on the treasurer's bond, on the other hand, argues that it was properly granted a nonsuit, for the entire misappropriation is asserted to have occurred in the office of tax collector. In order to properly protect and safeguard its rights in the premises the irrigation district is placed in the anomalous position of having to contend, at one and the same time, that the judgment of nonsuit and dismissal was improperly granted as to the surety on the treasurer's bond, and that the judgment for the full sum embezzled was properly entered as against the sureties on the tax collector's bond. . Concretely stated, our problem is to determine whether the sum of $16,334.23, the difference between the full amount misappropriated and that conceded to have been misappropriated in the tax collector's office, was embezzled by Edwards as treasurer or tax collector.

The business of the plaintiff district is managed and conducted by a board of directors, an assesssor, tax collector, treasurer, and secretary, the latter performing functions somewhat similar to those of a county auditor. These several offices are, of course, separate and distinct, and the fact that Edwards simultaneously occupied two of them is immaterial here so far as the rights and obligations of the respective sureties are concerned. It had been the practice in the district to charge the tax collector at the proper time with the assessment-roll. Each month thereafter he would declare under oath to the secretary the amount of his collections, for which he would then be given a "permit" to

deposit said collections with the treasurer. Upon his subsequent presentation to the secretary of the treasurer's receipt the collector would then be credited as against the assessment-roll with the amount so deposited and a charge therefor made against the treasurer on the secretary's books. In the present case, as disclosed by the evidence, the treasurer's books reveal that from September 30, 1921, until and including August 31, 1922, his monthly reports of cash on hand exactly checked with and equaled in amount the total of his bank deposits. During this period there apparently existed no shortage in Edwards' treasury account. However, on September 30, 1922, his books as treasurer disclose that his bank deposits were $16,334.23 less than the cash reported on hand, the exact amount here in controversy. This discrepancy between the cash reported on hand by the treasurer and his bank deposits continued through the months of October, November, and December, 1922. At the close of January, 1923, however, the bank deposits of the treasurer again equaled in amount the cash reported by him to be on hand.

Passing now to a consideration of Edwards' books as tax collector it appears from the record that in the period from December 10, 1922, to January 6, 1923, he collected $186,975.93. This entire amount, as evidenced by the certificates of deposit purchased by him and deposited to his account as treasurer, was actually paid over by Edwards as tax collector to himself as treasurer. As tax collector, however, he reported to the secretary that his collections for this period were only $170,641.70, and consequently received "permits" from the secretary to deposit only this latter sum, though, as stated, he actually paid into the treasury as tax collector the full $186,975.93 collected by him. It is significant to note that the difference between the exact amount collected as tax collector and actually deposited to the credit of the treasurer during this period and the amount reported to have been collected and for which "permits" were issued by the secretary and receipts given by the treasurer equaled in amount the sum here in dispute, viz., $16,334.23. This evidence, in our opinion, tends strongly to indicate that the apparent shortage of $16,334.23 appearing in the treasurer's account from September to December, 1922, and which disappeared in January of 1923

was attempted to be concealed by having the tax collector, who was also treasurer, actually deposit to his account as treasurer all of the moneys collected by him for the period ending January 6, 1923, but reporting said collections to the secretary as being $16,334.23 less than the amount so collected and deposited.

It is urged by the surety on the treasurer's bond that there is no provision in the act under which the plaintiff district was formed requiring its treasurer to keep all funds received by him in such capacity on deposit and that, as a consequence, it cannot be assumed that any discrepancy in the months of September to December, 1922, between the cash reported on hand by the treasurer and that actually kept on deposit by him resulted from any defalcation of the treasurer. In other words, it is contended by the treasurer's surety that he may have had in his safe or his desk or elsewhere during these several months a sum equal to the amount ($16,334.23) representing the difference between the cash reported on hand by the treasurer during this period and that actually on deposit. For the purpose of this decision we will assume that such was the case and that any discrepancy in the treasurer's books during the latter part of the year 1922 between the cash reported on hand and that on deposit did not represent or constitute a defalcation on that officer's part. However, this assumption does not, in our opinion, serve to relieve the treasurer or his surety from all responsibility or justify the dismissal of the action as to them. There is no dispute, as already stated, but that Edwards' conduct, either as tax collector or treasurer, or both, resulted in a loss to the plaintiff district of $18,-612.58. A portion of this sum has been accounted for and charged to him as tax collector, for which his sureties in that capacity are liable. To place the burden and responsibility for the residue of this amount upon these same sureties it is, of course, necessary that the evidence show that Edwards, as tax collector, refused and failed to pay over to the treasury moneys collected by him to this amount, viz., $16,334.23. There is no evidence to this effect in the entire record. On the contrary, it therein appears that, excluding the sum of $2,278.35 already accounted for, Edwards, as tax collector, deposited to his account as treasurer every cent of money collected by him in the former capacity.

It is true that he represented to the secretary that his collections were $16,334.23 less than the actuality and that he, therefore, received ''permits'' to deposit only the lesser sum of $170,641.70. This course, while a suspicious circumstance, does not of itself establish, as the surety on the treasurer's bond would have us believe, a shortage or defalcation in the tax collector's office when in truth and in fact that officer deposited to the account of the treasurer the actual amount collected by him. It would seem, therefore, that Edwards as tax collector having so deposited all moneys then in his possession had fulfilled his duty in this regard, though in an admittedly irregular manner. That the treasury office might have applied or appropriated this $16,334.23, actually deposited, but for which a treasury receipt was not given, in an improper or unaccounted for way, should not make the sureties on the tax collector's bond liable therefor. In *United States* v. *Irving Executors,* 42 U. S. (1 How.) 250, 261, 262 [11 L. Ed. 120, see, also, Rose's U. S. Notes], it is declared that ''if there was no misapplication of the public money by the collector, and he paid over to the government, or to its order, all the moneys he received during the official term for which the defendants were his sureties, however such payments may have been appropriated by the Treasury, the sureties are discharged.'' That the tax collector failed to observe the strict letter of the law and deposited in an irregular manner this $16,334.23 to his account as treasurer should not place the burden of liability on his sureties as tax collector. In arriving at this conclusion we are not embarrassed by the case of *County of Mendocino* v. *Johnson,* 125 Cal. 337, 341 [58 Pac. 5], cited by the surety on the treasurer's bond to the effect that an irregular method of payment of public funds does not serve to relieve an official of liability therefor. In that case the plaintiff had by its evidence supported its allegation that the defendant tax collector had not paid into the treasury some $3,000 of public moneys coming into his hands. As a defense the tax collector offered to prove that he had actually paid the moneys into the treasury without following the forms of payment prescribed by the county government act. The trial court refused to permit the introduction of evidence of payment into the treasury unless the defendant could establish and show that such payment

was made in conformity with the provisions of the county government act. In reversing the judgment for plaintiff because of the trial court's refusal to permit the introduction of evidence tending to show payment, though in an irregular manner, into the treasury of the moneys sued for, this court declared: "A payment to the treasurer in a mode other than that expressly provided by law would not exonerate the tax collector or his bondsmen from an action at the instance of the county, unless proof were made that the county actually received the money. In other words, the tax collector, or any other debtor of the county, is entitled to his acquittance from the county only when he has complied with the forms of law governing his payments into the treasury. If he sees fit to adopt an unauthorized mode of payment, he will be exonerated when he can make it appear, not only that he has paid the money, but that the county has received it. The mere deposit with the treasurer would not be proof sufficient thus to exonerate him. It would be in the nature of an individual deposit made at the party's private risk. But, nevertheless, if the tax collector could show that he had in fact paid the money to the treasurer, and that the county had obtained the benefit of it, then, notwithstanding the irregularity, no loss of funds would have resulted, and neither the tax collector nor his bondsmen could be properly charged in an action such as this for peculation or misappropriation. Therefore, although the offered evidence of the irregular payment would not have been sufficient of itself to exonerate the defendants, it was a step in that direction, and it was error upon the part of the court to refuse to accept the evidence without proof first made of a compliance with the terms of the County Government Act, since that proof, from the loose methods seemingly employed by the treasurer and auditor, as well as the tax collector, could never be made at all, not only as to the $3,000 here in question, but perhaps also as to the whole $132,000 charged upon." In the case at bar, as we have pointed out, the evidence sufficiently establishes that the $16,334.23 now in dispute had been actually deposited by the tax collector to the credit of the treasury department of the plaintiff district. The district, momentarily at least, may be said to have actually received this money and to have received the benefit of it so far as the defendant

tax collector and his bondsmen are concerned. It is, therefore chargeable to the treasurer and his surety in that capacity, even though not "officially" receipted for by said treasurer, and any subsequent disposition or appropriation thereof should be explained by them. To state the proposition in a different way, the treasurer while having accounted for all of the moneys "receipted" for by him has apparently failed to account for *all* of the moneys of the district *actually* received by him. The judgment of nonsuit and dismissal was, therefore, improperly granted as to the treasurer and his surety.

The case of *People* v. *Hammond*, 109 Cal. 384, 392 [42 Pac. 36], is clearly distinguishable from this case. The general rule is there recognized that where a person succeeds himself in office and during his second term appropriates moneys received by him officially to make good a default committed by him in the first or other prior term, the sureties upon his bond for the second or other subsequent term will be liable. This is so, however, merely because the officer has been guilty of a *second* embezzlement or wrongful application of funds by employing public moneys received by him during a subsequent term of office to cover the peculations of a prior term. Such is not the case here for, as shown, Edwards as tax collector actually deposited the $16,334.23 here in dispute to the account of the treasurer and there could not, therefore, have been any defalcation as to this sum in his office as tax collector. The conclusions herein announced are based solely on the record now before us and, of course, nothing said in this opinion is intended to preclude the treasurer's surety on the retrial of these causes from offering, by way of defense, any proof it might have tending to show that the peculations resulting in the loss of this $16,334.23 antedate anything now appearing in the record.

We are not here concerned with any so-called "book shortage" of $11,619.59 appearing upon the face of Edwards' books as treasurer, for it is the fact and not the condition of the books which fixes the liability of the defendants. (*Anaheim Union Water Co.* v. *Parker*, 101 Cal. 483, 493 [35 Pac. 1048].) With this conclusion the surety on Edwards' bond as treasurer must necessarily agree for it

concedes in its brief that "the 'books' were wrong and did not represent the *true facts* . . . "

For the foregoing reasons it is ordered that the judgment in action numbered Sac. 4116 be and the same is reversed. It is further ordered that the judgment of nonsuit and dismissal entered in action numbered Sac. 3957 be and the same is reversed.

Rehearing denied.

All the Justices present concurred.