[L. A. No. 29576.   In Bank.   Dec. 24, 1968.]

SUMITOMO BANK OF CALIFORNIA, Plaintiff and Appellant, v. FRANK MIN IWASAKI, Defendant and Respondent.

Mori & Katayama and Arthur S. Katayama for Plaintiff and Appellant.

Paul E. Homrighausen, Roland E. Brandel, Morrison, Foerster, Holloway, Clinton & Clark, Anderson, McPharlin & Conners and Robert C. Haase, Jr., as Amici Curiae on behalf of Plaintiff and Appellant.

Robert Y. Iwasaki for Defendant and Respondent.

Frederick E. Watson as Amicus Curiae on behalf of Defendant and Respondent.

TOBRINER, J.—Plaintiff brought this action on a "Continuing Guaranty" agreement which provided that defendant guaranteed all present and future indebtedness of Mikio

and Yo Nagayama to the extent of $5,000 principal plus interest. Plaintiff sought recovery of the amounts owed by the Nagayamas on three loans, one of which plaintiff made several months after defendant executed the continuing guaranty. The trial court entered judgment for plaintiff in the principal sum of $2,253.13, plus $215.45 interest and $235.00 attorney's fees. Plaintiff appeals, alleging that the trial court erred in holding that defendant was discharged from liability on the third loan by plaintiff's failure to disclose to defendant that the Nagayamas required that loan to pay their federal taxes.[1]

This appeal presents an issue of first impression: whether a creditor owes a duty of disclosure to a surety on a continuing guaranty during the course, as well as at the inception, of the suretyship relationship, and if so, the nature and extent of that duty. We shall explain why we adopt the Restatement rule. ▮▮▮ That rule provides that each time the creditor accepts the continuing offer of a surety on a continuing guaranty by extending further credit to the principal debtor, the creditor owes a duty to the surety to disclose facts known by the creditor if the creditor has reason to believe that those facts materially increase the risk beyond that which the surety intended to assume and that those facts are unknown to the surety. (Rest., Security, § 124, subd. (1), com. *c*, pp. 327-328, 330.)

We first review the decisions relating to the creditor's duty of disclosure to the surety. We then explain that the evidence in the present case does not sufficiently support a finding that plaintiff's failure to inform defendant that the Nagayamas required a loan to pay their federal taxes constituted a breach of plaintiff's duty of disclosure which discharged defendant from liability on the third loan.[2]

---

[1]Defendant has not filed a cross-appeal. We therefore do not review the judgment insofar as it adversely affects defendant.

[2]Plaintiff has three other contentions, in addition to the two relating to the trial court's findings of breach of duty of disclosure and ''culpable negligence'' on the part of plaintiff. None of the contentions merits more than brief discussion.

The first attacks the sufficiency of defendant's answer. Defendant denied plaintiff's allegations and, as affirmative defenses, pleaded that he understood the document he signed as a guaranty on one $5,000 loan, not as a *continuing* guaranty and, further, that he had no knowledge of any loan other than the $5,000 one made at the time he executed the guaranty. Although defendant did not plead breach of duty of disclosure as an affirmative defense to liability on the third loan, the parties and the trial judge proceeded on that theory throughout the trial. Plaintiff is therefore estopped from asserting that the issue was not properly in controversy. (*McClure* v. *Donovan* (1949) 33 Cal.2d 717, 731 [205 P.2d 17]; *Auer* v. *Frank* (1964) 227 Cal.App.2d 396, 405 [38 Cal.Rptr. 684,

■ In all suretyship relations, the creditor owes to the surety a duty of continuous good faith and fair dealing. (*County of Glenn* v. *Jones* (1905) 146 Cal. 518, 520 [80 P. 695, 2 Ann.Cas. 764] ; *Ely* v. *Liscomb* (1914) 24 Cal.App. 224, 228 [140 P. 1086] ; *Hamlen* v. *Rednalloh Co.* (1935) 291 Mass. 119 [197 N.E. 149, 153, 99 A.L.R. 1230] ; *First Citizens Bank & Trust Co. of Utica* v. *Sherman's Estate* (1937) 250 App. Div. 339 [294 N.Y.S. 131, 139] ; Stearns, The Law of Suretyship (5th ed. 1951) § 2.11, at p. 22; 1 Story, Equity Jurisprudence (14th ed. 1918) § 448, at p. 430.) Thus, the creditor must not misrepresent or conceal facts so as to induce or permit the surety to enter or continue in the relationship in reliance on a false impression as to the nature of the risk. As with other contracts, a creditor's fraud, which may consist of intentional or negligent misrepresentation or active suppression of the truth, will discharge the surety as to any subsequently incurred liability. (Arant, Law of Suretyship and Guaranty (1931) § 28, at p. 75; 1 Brandt, The Law of Suretyship and Guaranty (3d ed. 1905) § 256, at p. 505; cf. 1 Corbin, Contracts (1963) § 6, at pp. 12-13.)

■ No general duty imposes upon the creditor the obligation to disclose to the surety such matters as the creditor knows might affect the surety's risk.[3] On the other hand,

8 A.L.R.3d 1108]; *People* v. *Nahabedian* (1959) 171 Cal.App.2d 302, 306 [340 P.2d 1053].)

Plaintiff's second contention constitutes an attack on the sufficiency of the evidence to support a statement by the trial judge which appears in the record. Since the statement is not a formal finding of fact underlying the judgment, it is not subject to review.

Plaintiff's third contention—that the evidence is insufficient to support two formal findings—also lacks merit. The court found that the Nagayamas' checking account at plaintiff bank contained $1,300 on January 22, 1962, the date of the third loan for which defendant denies liability. The court also found that the $853 payment on the July 1961 $5,000 loan which was due on January 23, 1962, was paid when due from the checking account. Both findings were based on, and are supported by, plaintiff's records. The testimony of one of plaintiff's officers that plaintiff did not appear to have authority automatically to debit the Nagayamas' account when a payment became due does not undermine these findings. (Cf. Civ. Code, §§ 2849-2850; *Massachusetts Bonding etc. Co.* v. *Osborne* (1965) 233 Cal.App.2d 648, 662-663 [43 Cal.Rptr. 761].)

[3]Although the surety is said to be "a favorite of the law" (1 Brandt, *op. cit. supra*, § 106, at p. 231; Arant, *op. cit. supra*, § 28, at p. 75), the creditor does not stand as a fiduciary in his relation to the surety. "The contract of suretyship . . . is not in strictness uberrimae fidei, or one in which there is an obligation, irrespective of some fiduciary relation between the parties, to make full and voluntary disclosure of all matters known to the creditor that would or might be material to the surety's risk, . . ." (Spencer, Suretyship (1913) § 51, at p. 67.) Therefore, the rule governing contracts in general applies to the suretyship agreement. (Civ. Code, § 2837; Stearns, *op. cit. supra*, § 2.4, at p. 13; Rest., Security, § 88.)

under some circumstances the creditor may be required voluntarily to make such a disclosure, and his failure to do so may discharge the surety. Whether the creditor owes the surety such a duty in turn depends upon the nature of the suretyship agreement (i.e., the nature of the risk the surety promises to assume) and the relationship between the particular creditor and surety. (*Bank of Monroe* v. *Anderson Bros. Min. & Ry. Co.* (1885) 65 Iowa 692 [22 N.W. 929, 933-934]; *Associated Indem. Corp.* v. *Del Guzzo* (1938) 195 Wash. 486 [81 P.2d 516, 526-527]; *London General Omnibus Co., Ltd.* v. *Holloway* (1912) 2 K.B. 72, 78-79, 82-83; *Hamilton* v. *Watson* (1845) 12 Cl. & F. 109, 118-120, 8 Eng. Rep. 1339, 1343-1344; Note, *Principal and Surety* (1938) 36 Mich.L.Rev. 1217, 1218-1220.)

1. *The duty of disclosure owed by the creditor to the surety at the inception of the relationship*

The leading case imposing a duty upon the creditor voluntarily to disclose the facts to the surety, *Railton* v. *Mathews* (1844) 10 Cl. & F. 934, 8 Eng. Rep. 993, involved a fidelity suretyship. Lord Cottenham stated, "it is the duty of the party acquiring the bond to communicate those circumstances . . . [which] the noncommunication, or, . . . the concealment of . . . would invalidate the obligation and release the surety . . . ." (10 Cl. & F. at p. 940, 8 Eng.Rep. at p. 995.) Lord Campbell expressed a broader rule, stating that, "If the [employers] had facts within their knowledge which it was material the surety should be acquainted with, and which the [employers] did not disclose, . . . the concealment of those facts . . . discharges the surety; . . . ." (10 Cl. & F. at p. 943, 8 Eng. Rep. at p. 996.)

The American cases, following the decision of the House of Lords in *Railton* v. *Mathews,* adopted as to fidelity bonds the broader rule expressed by Lord Campbell. ▮ That rule imposes an absolute duty upon the obligee to volunteer disclosure of all facts materially affecting the risk to the surety on a fidelity bond. (See, e.g., *Park Paving Co.* v. *Kraft* (1918) 262 Pa. 178 [105 A. 39, 40]; *Associated Indem. Corp.* v. *Del Guzzo, supra,* 81 P.2d at p. 526.) Irrespective of the motive or intent, mere nondisclosure of facts known by the obligee which materially affect the surety's risk, such as prior dishonesty of the principal on the fidelity bond, therefore discharges the surety. (*Railton* v. *Mathews, supra,* 10 Cl. & F. at p. 943, 8 Eng. Rep. at p. 996; *Harrison* v. *Lumbermen & Mechanics' Ins. Co.* (1879) 8 Mo.App. 37, 40.) California follows this

rule. (*Guardian Fire etc. Assur. Co.* v. *Thompson* (1885) 68 Cal. 208, 209-210 [9 P. 1]; *West American Finance Co.* v. *Pacific Indem. Co.* (1936) 17 Cal.App.2d 225, 234 [61 P.2d 963].)[4]

Although the American cases involving credit, as distinguished from fidelity, suretyships[5] often contain citations to and quotations from *Railton* and its progeny (see, e.g., *American Nat. Bank* v. *Donnellan* (1915) 170 Cal. 9, 22 [148 P. 188, Ann.Cas. 1917C 744]; *First Citizens Bank & Trust Co. of Utica* v. *Sherman's Estate, supra,* 294 N.Y.S. 131, 139), these citations and quotations are mere dicta. Their actual holdings show that the cases inplicitly follow the English line of decisions, explicitly rejecting the application of *Railton* to cases involving guaranties of credit. (*London General Omnibus Co., Ltd.* v. *Holloway, supra,* 2 K.B. 72, 78-79, 82-83, 88; *Hamilton* v. *Watson, supra,* 12 Cl. & F. 109, 118-120, 8 Eng. Rep. 1339, 1343-1344.) ■ A creditor, such as a bank, does not, therefore, owe an absolute duty to the surety to disclose, without request by the surety, all facts within its knowledge which may materially affect the surety's risk. (Arant, *op. cit. supra,* § 28, p. 77; Stearns, *op. cit. supra,* § 7.15, pp. 218-220.)

We set forth the reasons for the differences in the nature of the duty of disclosure imposed in the case of the fidelity bond and that required in the instance of the creditor bond. First, in the case of a surety on a fidelity bond, the very act of offering or continuing the employment itself suggests that the employer trusts the employee. On the other hand, "the bank or other creditor cannot reasonably be taken as affirming, by mere silence respecting earlier dealings, the financial ability of the person whom the proposed surety is asked to guarantee. . . . [T]the probable reason for requiring a guarantee is

---

[4]Insofar as *Anaheim Union Water Co.* v. *Parker* (1894) 101 Cal. 483, 494 [35 P. 1048], holds that the obligee's non-disclosure of the principal's default does not discharge a surety on a fidelity bond unless there was "an actual intent to conceal, or culpable negligence," the case is overruled. Such a limitation on the duty of disclosure owed to a surety ·on a fidelity bond conflicts with the rule of *Railton* which California and a majority of American jurisdictions follow. (See Stearns, *op. cit. supra,* § 7.15, at p. 218, and cases cited in fn. 8.)

[5]The distinction between the surety on the fidelity bond and on the creditor bond is as basic as it is universally recognized. The fidelity bond consists of "a guaranty of the personal honesty of . . . an officer, furnishing indemnity against [his] defalcation or negligence." (*Phillipps* v. *Board of Education of Pineville* (1940) 283 Ky. 173 [140 S.W.2d 819, 822].) The surety on the creditor bond " 'binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not.' " (*Hope* v. *Board of Liquidation* (1891) 43 La. Ann. 738 [9 So. 754, 762] (concurring opinion).)

dissatisfaction with the customer's credit.'' (*London General Omnibus Co., Ltd.* v. *Holloway, supra,* 2 K.B. 72, 87 (Kennedy, L.J.).)

Second, whereas on a fidelity bond the employer-obligee enjoys direct access to information concerning the employee-principal's performance, and in this respect occupies a far better position than the surety, a different situation prevails as to a creditor bond. A creditor such as a bank is usually in no better position than the surety to acquire information about the financial condition of the debtor. Particularly in those cases in which the surety assumes the risk at the debtor's request, rather than the creditor's, the creditor may reasonably assume that the surety will acquire from the debtor himself all information which it reasonably believes to be relevant to the risk. (*Lee* v. *Jones* (1864) 17 C.B. (N.S.) 482, 503, 144 Eng. Rep. 194, 202; Stearns, *op. cit. supra,* § 7.15, p. 218.)

Thus, the leading English case on the duty of disclosure owed by a bank to a surety that guarantees the credit of a bank customer, *Hamilton* v. *Watson, supra,* 12 Cl. & F. 109, 119, 8 Eng. Rep. 1339, 1344, holds that the bank does not owe a duty of disclosure of pertinent facts in the absence of an inquiry by the surety, unless the bank knows, and has reason to believe that the surety does not know, that the risk involved is other than that which the surety would reasonably expect. The prime example of a fact materially altering the risk which the creditor should reasonably believe is unknown to the surety would be the existence of a contract between the creditor and debtor (other than the debt secured) affecting the debtor's financial position. (*London General Omnibus Co., Ltd.* v. *Holloway, supra,* 2 K.B. 72, 79; *State Sav. & Trust Co.* v. *Grady* (1923) 20 Ohio App. 385 [153 N.E. 238, 239]; *Associated Indem. Corp.* v. *Del Guzzo, supra,* 81 P.2d 516, 527.)

Similarly, the leading California case on a bank's duty to volunteer disclosure to a surety, *American Nat. Bank* v. *Donnellan, supra,* 170 Cal. 9, 21-23, holds that a bank owes a greater duty of disclosure to a surety who has not inquired about the debtor's financial status[6] when it, rather than the

---

[6]If the intended surety inquires of the creditor about any fact materially affecting the proposed risk, the creditor acquires a duty to disclose all material facts within its knowledge. (*Goodwin* v. *Abilene State Bank* (Tex.Civ.App. 1927) 294 S.W. 883, 887 (''such inquiry itself create[s] a trust relation between [the intended surety] and the bank, . . .''); *Bank of Monroe* v. *Anderson Bros. Min. & Ry. Co., supra,* 22 N.W. 929, 933; Stearns, *op. cit. supra,* § 7.15, pp. 218-219.)

debtor, requested the surety to assume the risk.[7] The fact that the creditor, rather than the debtor, solicits the surety, imposes upon the creditor a greater duty of disclosure because the creditor may not then assume that the surety will acquire all material information from the debtor. Circumstances other than solicitation of the surety by the creditor, however, may

[7]Contrary to the intimation in *Produce Clearings* v. *Butler* (1964) 231 Cal.App.2d 494, 500-501 [42 Cal.Rptr. 114], *Donnellan* does not hold that a creditor owes a duty of voluntary disclosure to an intended surety *only* if the creditor, rather than the debtor, requested that the surety assume the risk. *Donnellan* merely holds that " '*Especially* is [there a duty voluntarily to disclose material facts unknown to the surety] where the obligation is entered into at the request of the person to whom the security is given.' [Citation.]" (Italics added.) (170 Cal. at p. 23.) And earlier in the discussion of the creditor's duty "where the surety . . . comes forward at the request of the debtor," *Donnellan* states that the "duty . . . is performed if [the creditor] fully and fairly answers the questions put to [it], *and conceals nothing which* [*the creditor itself*] *believes might influence the surety's conduct.*" (Italics added.) (170 Cal. at p. 21.)

*Mahoney* v. *Founders' Ins. Co.* (1961) 190 Cal.App.2d 430, 438-439 [12 Cal.Rptr. 114], recognizes that *Donnellan* does not limit the creditor's duty of voluntary disclosure only to those cases in which the surety assumes the risk at the request of the creditor. *Mahoney* held that the obligee on an indemnity bond did not owe a duty to the surety voluntarily to disclose that he had agreed to advance race horses rather than money to the principal as the bond recited, because "plaintiff had no negotiations or communications whatsoever with defendant prior to issuance or delivery of the bond; . . . [and] whatever circumstances there might have been which could create doubt in the mind of plaintiff as to whether defendant knew the true facts, they were not sufficiently compelling, in the light of plaintiff's remoteness from defendant in the transaction, to give rise to a duty to inquire of defendant whether or not it knew the facts." *Mahoney* thus implicitly recognizes that whether the creditor rather than the debtor solicited the surety constitutes only one factor in determining whether the relationship of the parties imposes a duty upon the creditor voluntarily to disclose material facts to the surety. Another factor, as *Mahoney* explains, would be whether the creditor and surety engaged in negotiations prior to the surety's assumption of the risk. And further, *Mahoney* recognizes "a duty to disclose might be imposed upon an obligee who did not negotiate with the surety . . . ." (190 Cal.App.2d at p. 439.) But we cannot accept the further dicta suggesting that such a duty could arise only "if it is patently clear that the facts affecting the risk were misrepresented by the principal, and that the surety does not possess knowledge of the true facts," (*ibid.*) for there may be circumstances other than misrepresentation by the principal which require the creditor to disclose facts affecting the risk when the creditor believes that the surety does not possess knowledge of such facts.

The one other California case involving a creditor's duty of voluntarily making disclosure to a surety, *Bank of America* v. *Lamb Finance Co.* (1956) 145 Cal.App.2d 702, 708, 718-719 [303 P.2d 86], involved the same sort of relationship and facts as *Donnellan*: the bank solicited the surety and the bank both misrepresented and failed to disclose facts materially affecting the risk. But the *Lamb* case nowhere suggests that the bank incurred the duty to disclose the adverse financial situation of the debtor solely because the bank had solicited the surety or because it had also made affirmative (false) representations about the debtor.

give the creditor reason to believe that the surety will rely on it, rather than the debtor, to receive information material to his risk. Solicitation of the surety by the creditor should not, therefore, constitute a necessary condition precedent to the establishment of a creditor's duty to a surety to disclose facts materially affecting the surety's risk. It constitutes, instead, a prime example of those cases in which the creditor must, without request, disclose material facts because the relationship of the parties gives the creditor reason to believe that the surety neither possesses nor will affirmatively seek knowledge of those facts. (*Jungk* v. *Holbrook* (1897) 15 Utah 198 [49 P. 305, 308, 62 Am.St.Rep. 921]; cf. *Mahoney* v. *Founders' Ins. Co., supra,* 190 Cal.App.2d 430, 438-439; see also fn. 7, *supra.*)

The decisions in *Hamilton* v. *Watson* and the *Donnellan* case thus constitute specific instances of the more general doctrine that "if [the creditor] knows, or has good grounds for believing, that the surety is being deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good faith and fair dealing demand that [the creditor] should make such disclosure to [the surety]; and if [the creditor] accepts the contract without doing so, the surety may afterwards avoid it." (*Bank of Monroe* v. *Anderson Bros. Min. & Ry. Co., supra,* 22 N.W. 929, 934; *Wakonda State Bank* v. *Fairfield* (1928) 53 S.D. 268 [220 N.W. 515, 517]; *Goodwin* v. *Abilene State Bank, supra,* 294 S.W. 883, 886-887; *Jungk* v. *Holbrook, supra,* 49 P. 305, 307-308; Arant, *op. cit. supra,* § 28, at pp. 77-78; 10 Williston, Contracts (3d ed. 1967) § 1249, at p. 795.)

Section 124, subdivision (1), of the Restatement of Security accurately synthesizes the above rule. That section provides: "Where before the surety has undertaken his obligation the creditor knows facts unknown to the surety that materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume. and the creditor also has reason to believe that these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety, failure of the creditor to notify the surety of such facts is a defense to the surety."[8]

[8]*American Nat. Bank* v. *Donnellan, supra,* 170 Cal. 9; *Produce Clearings* v. *Butler, supra,* 231 Cal.App.2d 494; *Mahoney* v. *Founders' Ins. Co., supra,* 190 Cal.App.2d 430, and *Bank of America* v. *Lamb Finance Co., supra,* 145 Cal.App.2d 702, implicitly followed the Restatement rule

The rule of the Restatement recognizes that whether a creditor owes a duty to volunteer disclosure to a surety depends upon the nature of the risk guaranteed and the relationship of the parties involved.[9] This rule places no undue burden on the creditor because it does not require the creditor "to investigate for the surety's benefit . . . [or] to take any unusual steps to assure himself that the surety is acquainted with facts which he may assume are known to both of them." (Rest., Security, § 124, com. *b*, at p. 328.)

2. *The duty of disclosure owed by the creditor to the surety during the course of the relationship.*

The creditor owes the same duty of disclosure during the course of the suretyship relationship as he does at its inception. Here not only the nature of the duty, but also the date of its inception, depends upon whether the surety guarantees fidelity or credit.

The English and American cases have long followed the rule that the duty of disclosure owed by an employer to a surety on a fidelity bond continues throughout the suretyship relation. (*Phillips* v. *Foxall* (1872) 7 L.Rep. (Q.B.) 666, 674; *Roberts* v. *Donovan* (1886) 70 Cal. 108, 110 [9 P. 180, 11 P. 599]; *West American Finance Co.* v. *Pacific Indem. Co.*, *supra*, 17 Cal.App.2d 225, 234; Arant, *op. cit. supra*, § 69, at pp. 303-305; Stearns, *op. cit. supra*, § 2.11, at pp. 22-23.) Unlike the surety on a continuing guaranty of credit for which the surety has not received an independent consideration, the compensated surety on a fidelity bond cannot revoke

---

in determining whether a creditor owed a duty of voluntary disclosure to a surety guaranteeing credit. The first California case expressly to recognize the Restatement rule is *Coke* v. *Reliance Co.* (1968) 262 Cal. App.2d 406 [68 Cal.Rptr. 741]. In holding that the plaintiff, who arguably stood in the shoes of the obligees on the bond because he controlled the credit practices of the obligees, did not owe a duty voluntarily to disclose the financial problems of the debtor to the surety, the court states: "There is neither evidence nor finding that [plaintiff] had such knowledge, that [the surety] did not know the facts, or that [plaintiff], even if he knew the facts, had any reason to believe them unknown to the surety. Such showing is essential (see Restatement, Security, § 124)." (262 Cal.App.2d at p. 408.)

[9] "Circumstances of the transactions vary the risks which will be regarded as normal and contemplated by the surety. While no surety takes the risk of material concealment, what will be deemed material concealment in respect of one surety may not be regarded so in respect of another. A creditor may have a lesser burden of bringing facts to the notice of a compensated surety who is known to make careful investigations before taking any obligation than to a casual surety who relies more completely upon the appearances of a transaction." (Rest., Security, § 124, com. *b*, at p. 329.)

at any time merely by giving written notice to the obligee. (Spencer, *op. cit supra,* §§ 103-104, at pp. 138-140; Stearns, *op. cit supra,* § 4.20, at p. 87.) Thus the surety on the fidelity bond must be afforded the opportunity to learn of facts which would discharge him from further liability. The obligee therefore owes an absolute duty throughout the relationship to disclose such facts to the surety. (Rest., Security, § 124, subd. (2).)[10]

■ The surety on a continuing guaranty of credit who has not received independent consideration binding him for a given period of time, unlike the compensated surety on a fidelity bond, may revoke the guaranty as to future liability at any time merely by giving written notice to the creditor. (Civ. Code, § 2815; *White Sewing Machine Co.* v. *Courtney* (1904) 141 Cal. 674, 677 [75 P. 296]; 10 Williston, *op. cit. supra,* § 1253, at pp. 807-808.) The creditor therefore does not owe a *continuous* duty of disclosure to a surety guaranteeing credit analogous to that owed to a surety on a fidelity bond. (*National Provincial Bank of England, Ltd.* v. *Glanusk* (1913) 3 K.B. 335, 338-339.)[11]

On a revocable continuing guaranty of credit, the creditor does, however, owe a duty of disclosure to a surety prior to every new extension of credit to the principal. ■ Each

---

[10]''Where, during the existence of the suretyship relation, the creditor discovers facts unknown to the surety which would give the surety the privilege of terminating his obligation to the creditor as to liability for subsequent defaults, and the creditor has reason to believe these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety without a violation of a confidential duty, the creditor has a duty to notify the surety, and breach of this duty is a defense to the surety except in respect of his liability for defaults which have occurred before such disclosure should have been made.'' (See also, Rest., Security, § 124, com. *e*, at p. 331.)

[11]*Glanusk* is the only case clearly raising the issue whether a creditor owes a duty of disclosure to a surety guaranteeing credit during the course as well as at the inception of the suretyship relationship. In determining that the bank did not owe such a duty to disclose the facts at issue in *Glanusk*, the court applied the cases delineating the bank's duty of disclosure at the inception of the suretyship relationship (e.g., *London General Omnibus Co., Ltd.* v. *Holloway, supra,* 2 K.B. 72; *Hamilton* v. *Watson, supra,* 12 Cl. & F. 109, 8 Eng. Rep. 1339). ((1913) 3 K.B. at p. 338.) The court thus assumed that the factors that determined whether the creditor owed a duty of voluntary disclosure at the inception of the relationship also governed whether the creditor owed such a duty during the relationship. Although the opinion contains broad language, the decision itself (see (1913) 3 K.B. at p. 339) does not conflict with the Restatement rule. (See also *St. Louis Brewing Assn.* v. *Hayes* (5th Cir. 1901) 107 F. 395, 402 [46 C.C.A. 370], which held that the creditors' affirmative misrepresentations about the debtor's performance of his obligations secured by the sureties' bond during the course of the suretyship relationship discharged the sureties.)

extension of credit creates a new suretyship contract because a revocable continuing guaranty is merely a continuing offer which the creditor accepts each time he extends credit to the principal. (1 Corbin, *op. cit. supra,* § 76, at pp. 325-326; 10 Williston, *op. cit. supra,* § 1253, at p. 807.) ▮ The creditor therefore owes the same duty of disclosure immediately prior to each new extension of credit as it owes at the inception of the suretyship relationship. Hence, just as subdivision (1) of section 124 of the Restatement defines the duty owed by the creditor to a surety on a revocable continuing guaranty when the surety executes the guaranty, so subdivision (1), rather than subdivision (2) (see fn. 10, *supra*), of section 124 of the Restatement defines that duty when the creditor is about to extend further credit to the principal.[12]

3. *Insufficiency of the evidence to support a finding that plaintiff breached a duty of disclosure which discharged defendant from liability on the third loan*

Section 124, subdivision (1), of the Restatement of Security prescribes three conditions prerequisite to imposition of a duty on a creditor to disclose facts it knows about the debtor to the surety. Those conditions are: (a) "the creditor has reason to believe" that those facts materially increase the risk "beyond that which the surety intends to assume"; (b) the creditor "has reason to believe that the facts are unknown to the surety"; and (c) the creditor "has a reasonable opportunity to communicate" the facts to the surety. (See text accompanying fn. 8, *supra.*) ▮ The creditor's failure to disclose such facts to the surety prior to an extension of further credit to the debtor will discharge the surety from liability on the subsequent loan only if all three conditions are satisfied. (Cf. *Coke* v. *Reliance Co., supra,* 262 Cal.App.2d 406, 408; see fn. 8, *supra.*) If the evidence fails to establish any one of the three factors, a judgment discharging a surety

---

[12]"The rule stated in Subsection (1) applies not only to cases where the surety has made an offer for a single obligation but also to offers to guarantee successive extensions of credit. The fact that the surety is already bound on one obligation does not excuse the creditor from disclosing material facts before the second obligation is incurred." (Rest., Security, § 124, com. *c,* at p. 330.) Thus the commentators provide the following example:

"S is surety to C for P on a continuing guaranty which S may revoke at any time by notice to C. After C has made several extensions of credit to P he learns that P is insolvent. S does not know this and C is aware of S's ignorance. C, without disclosing the fact of [P's] insolvency, makes further advances to P. S's liability is limited to P's defaults in advances occurring before C could have notified S of P's insolvency." (*Id.* at p. 330; see also, com. *e,* at p. 331.)

from liability because of a breach of a duty of disclosure governed by section 124, subdivision (1), cannot stand.[13]

The evidence, which may be summarized as follows, cannot support a finding that condition (a) was satisfied. The Nagayama brothers, who owned a grocery market, procured a $10,000 business loan from plaintiff in February 1961. Plaintiff made this loan without requiring any collateral or a guarantor. The record does not disclose whether defendant, who was the Nagayamas' insurance agent, directed them to plaintiff for this particular loan.

Defendant helped the Nagayamas procure a second loan on July 21, 1961. At that time the balance outstanding on the first loan was $6,000. The Nagayamas requested $5,000 more. Due to the current bank policy regarding indebtedness in excess of $10,000, plaintiff requested both collateral and defendant's signature as a continuing guarantor. The Nagayamas gave four insurance policies as collateral.[14] Defendant signed a document entitled "Continuing Guaranty" on the same day.

Both defendant and Frank Omatsu, an assistant vice president of the bank who was present at the conversation concerning the $5,000 loan, testified that defendant did not read the

---

[13]The trial court did not make any findings on conditions (a), (b), or (c). Instead, it found, inter alia, that the Nagayamas told plaintiff on January 22, 1962 (the date of the third loan) that they needed the loan to pay federal taxes, and that "Plaintiff was charged with a duty on January 22, 1962 to notify the defendant that the debtors were in dire financial straits due to the tax obligation owing, partially by reason of the prior business relationship between the parties herein, which relationship was close and of long duration." There is no finding relating the tax obligation and the "dire financial straits," and no evidence establishes that the Nagayamas' inability to pay their taxes without a loan meant that their financial position had deteriorated.

The trial court also found as conclusions of law that plaintiff violated section 124, subdivision (2), of the Restatement of Security (see fn. 10, *supra*), and that plaintiff "was also culpably negligent, and for each reason, cannot enforce the Guaranties against defendant as to any loans made on or about January 22, 1962." As explained above, subdivision (1), not subdivision (2), of section 124, governs the duty of disclosure owed by a creditor to a surety on a continuing guaranty prior to each extension of credit. (See fn. 12, *supra*, and accompanying text.) Plaintiff's contention that the trial court applied an incorrect rule of law is therefore accurate. Moreover, "culpable negligence" is not an issue in determining whether a creditor breached a duty of disclosure so as to discharge the surety for subsequently incurred liability. (See fn. 4, *supra*, and accompanying text.) We therefore do not consider plaintiff's contention that the evidence does not support a finding of culpable negligence.

[14]The trial court properly found that plaintiff applied the $2,742.62 proceeds from the liquidation of the four policies to the July 1961 $5,000 loan.

document which he signed.[15] Omatsu asked defendant to read it, but defendant declined because he said he "trusted" Omatsu. Thus, plaintiff knew that defendant relied on it to deal honestly with him. This fact, plus defendant's prior course of dealing with plaintiff over approximately six years, imposed upon the plaintiff a greater duty of disclosure to defendant than it would owe to a stranger who the bank might reasonably assume would place more reliance on the debtor. (Cf. *American Nat. Bank* v. *Donnellan, supra,* 170 Cal. 9, 22-23; text accompanying fns. 6-7.)

On January 22, 1962, the Nagayamas came into the bank immediately before closing time and asked for an additional loan "because the Federal tax people were demanding tax payment." Plaintiff extended $5,900 more credit, part of which was used to pay off the amount outstanding on the July 1961 loan. Omatsu testified that at that time he knew the Nagayamas "were in financial difficulty." He also testified that neither he nor anyone else at the bank informed defendant about the Nagayamas' financial difficulty because they took the continuing guaranty "at its face value."

Defendant, who at no time sent plaintiff a written notice of revocation of the guaranty, testified that he did not learn about the third loan of $5,900 until the Nagayamas were adjudicated bankrupt in June 1962. And, on reopening of the case, defendant further testified that he did not have any indication that the Nagayamas were in financial difficulty until early in February 1962. At that time the Nagayamas asked defendant not to cash immediately one of their insurance premium checks. Subsequently, defendant cancelled the Nagayamas' automobile insurance because their checks bounced.

Although the evidence establishes that plaintiff knew about the Nagayamas' inability to pay their federal taxes without a loan, the evidence cannot establish that (a) plaintiff had reason to believe that this fact materially increased the risk beyond that which defendant intended to assume. The evidence cannot establish condition (a) because no evidence discloses the financial condition of the Nagayamas in July

---

[15]Omatsu testified that plaintiff misplaced the document signed by defendant in July 1961. Plaintiff therefore brought this action on the basis of a second "Continuing Guaranty" which plaintiff had defendant sign. Omatsu could not remember any of the circumstances surrounding the signing of the second document which was dated August 29, 1961. Defendant testified that he did not read this document either. Both parties assume, however, that the two documents signed by defendant are identical.

1961, when defendant executed the guaranty. As a result no evidence describes the risk defendant intended to assume, or tells us whether plaintiff had reason to know what risk defendant intended to assume. Thus the evidence cannot support a finding that the Nagayamas' inability to pay their taxes without a loan materially increased defendant's risk. *A fortiori*, it cannot support a finding that *plaintiff had reason to believe* this fact materially increased defendant's risk. Indeed, the practice of borrowing funds to pay taxes and the resort to financial assistance for that purpose is so frequent in American life that its presence here surely does not establish that the creditor had reason to believe that this circumstance materially increased the risk beyond that which the surety intended to assume.

The evidence cannot support a finding that a necessary condition of section 124, subdivision (1), of the Restatement was satisfied.

The judgment, insofar as it rests upon the trial court's conclusion that defendant's performance as obligor on the third loan was excused, and insofar as it denies recovery to plaintiff on said third loan, is reversed. The cause is remanded to the trial court with directions to retry the issue of defendant's liability on said third loan. In all other respects, the judgment is affirmed. Each side is to bear its own costs on this appeal.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.