716 P.2d 1057

### GEORGIA–PACIFIC CORPORATION, WILLIAMS FURNITURE DIVISION, a corporation, Plaintiff/Appellee,

v.

### Gary R. LEVITZ and Jane Doe Levitz, his wife, Defendants/Appellants.

### No. 2 CA–CIV 5607.

Court of Appeals of Arizona, Division 2, Department B.

Feb. 5, 1986.

Reconsideration Denied March 24, 1986.

Friedlander & Richardson by J. Jeff Richardson, Phoenix, for defendants/appellants.

Paytas, Lutich, Bernstein, Shannon & Fleming and Earl Terman by Earl Terman, Phoenix, for plaintiff/appellee.

## OPINION

LIVERMORE, Presiding Judge.

Defendant, Gary Levitz, was in 1977 the chief executive officer and a substantial owner of M.D. Pruitt Furniture Co. In order to obtain credit for Pruitt with plaintiff, Williams Furniture, a division of Georgia Pacific Corporation, Levitz executed a personal guaranty of Pruitt's debts to Williams. That guaranty was revocable only by written notice. In January 1981, at a time when no money was owing from Pruitt to Williams, Levitz severed his relationship with Pruitt and sold his interest to another. Levitz never revoked his guaranty although Williams was aware that he no longer was involved with Pruitt. Williams also knew that Levitz had revoked similar guaranties with other furniture manufacturers. Its credit manager assumed that Levitz had simply overlooked notifying Williams. Despite substantial concerns about the financial stability of Pruitt, Williams shipped furniture to it in the summer of 1981. Shortly thereafter, Pruitt went bankrupt. Suit was brought on the Levitz guaranty and Levitz appeals from the summary judgment granted against him. We reverse.

Inferentially the original guaranty in this case was signed because of Levitz's personal involvement as chief executive officer of the principal, Pruitt. No reason appears in the record why Levitz would continue the guaranty after he ceased his personal involvement with Pruitt. Indeed, after Levitz's sale of his interest and because of Pruitt's slowness in paying its bills, Williams undertook a credit review of Pruitt. It extended credit despite its credit manager's advice that it ought not to. The question presented is whether a potential creditor, suspecting that a guarantor does not intend to be bound, can nonetheless bind him by offering credit to a financially weak principal in reliance on the guarantor's failure to notify the creditor of his intention to terminate the guaranty. For at least two reasons, we hold that it cannot.

A continuing guaranty of debts is, in effect, an offer accepted serially by each extension of credit. "Each extension of credit creates a new suretyship contract because a revocable continuing guarantee is merely a continuing offer which the creditor accepts each time he extends credit to the principal." *Sumitomo Bank v. Iwasaki,* 70 Cal.2d 81, 92–93, 73 Cal.Rptr. 564, 572, 447 P.2d 956, 964 (1968). This being so, we believe the principle applicable that an offer, known by the offeree to have been extended under a unilateral mistake of fact, cannot be accepted so as to bind the offeror. 3 A. Corbin, Contracts § 610 (1960). We see no difference between an offer known by the offeree to contain a mistaken price term, see *Corbin* § 609, and an offer known by the offeree not to have been knowingly made. In neither case ought the offeree be able to snap up that which he knows to have been mistakenly offered.[1]

Finally, we believe Restatement of Security § 124(1) (1941) applicable to the facts of this case. That section provides:

"Where before the surety has undertaken his obligation the creditor knows facts unknown to the surety that materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume, and the creditor also has reason to believe that these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety, failure of the creditor to notify the surety of such facts is a defense to the surety."

Particularly appropriate to the facts of this case is the following passage from the commentary to that section:

"c. The rule stated in Subsection (1) applies not only to cases where the surety has made an offer for a single obligation but also to offers to guarantee successive extensions of credit. The fact that the surety is already bound on one obligation does not excuse the creditor from disclosing material facts before the second obligation is incurred.

3. S is surety to C for P on a continuing guaranty which S may revoke at any time by notice to C. After C has made several extensions of credit to P he learns that P is insolvent. S does not know this and C is aware of S's ignorance. C, without disclosing the fact of P's insolvency, makes further advances to P. S's liability is limited to P's defaults in advances occurring before C could have notified S of P's insolvency."

Williams' credit manager advised his superiors not to extend credit to Pruitt in the summer of 1981 because he feared Pruitt to be on the edge of insolvency. Because Williams knew that Levitz had not been involved in Pruitt's operations for six months, it also had reason to know that Levitz would not know of Pruitt's declining fortunes. Under these circumstances, the Restatement section would appear applicable. See *First National Bank v. Bennett Venture, Ltd.,* 130 Ariz. 562, 637 P.2d 1065 (App.1981); *Sumitomo Bank v. Iwasaki,* supra.

The judgment is reversed and the matter remanded for further proceedings.

FERNANDEZ and LACAGNINA, JJ., concur.

---

1. We do not view this as inconsistent with *Valley National Bank v. Shumway,* 63 Ariz. 490, 163 P.2d 676 (1945), and *Consolidated Roofing & Supply Co. v. Grimm,* 140 Ariz. 452, 682 P.2d 457 (App.1984), because in neither of those cases was there evidence that the creditor knew that the failure to terminate the guaranty was an oversight on the guarantor's part.