790 P.2d 304

Marion L. PARRISH and Mary E. Parrish, husband and wife, Plaintiffs/Appellants,

v.

UNITED BANK OF ARIZONA, Defendant/Appellee.

No. 2 CA–CV 89–0198.

Court of Appeals of Arizona, Division 2, Department A.

March 13, 1990.

Reconsideration Denied April 19, 1990.

Law Offices of Robert A. Kerry, P.C. by Robert A. Kerry, Tucson, for plaintiffs/appellants.

Stompoly & Stroud, P.C. by Sally M. Darcy and Mary Judge Ryan, Tucson, for defendant/appellee.

## OPINION

HOWARD, Judge.

This is an appeal from the granting of a summary judgment. The sole issue is whether a release signed by appellants precluded them from subsequently suing the bank.

We consider the facts in the light most favorable to appellants. *Matter of Estate of Kerr*, 137 Ariz. 25, 667 P.2d 1351 (App. 1983). In February 1984, appellants (Parrish) approached appellee (bank) for a loan to develop Gardner Mobile Home Estates. The bank's assistant vice-president, George Rex, advised Parrish that the bank would not consider the loan because he had no experience as a contractor and suggested that W.A. Mutterer, dba Mutterer Construction Company, would make a good contractor and partner for the business. When this recommendation was made, the bank failed to disclose to Parrish that Mutterer was experiencing financial difficulty and was behind on his loans with the bank.

Parrish followed the recommendation of the bank, took on Mutterer as a partner, and the loan was made in the sum of $868,000. Shortly after the loan was made, Mutterer became insolvent and failed to pay subcontractors on the mobile home park. Liens were placed on the park by the subcontractors and Parrish was unable to sell lots in the park. Mutterer filed for protection under Chapter 11 of the United States Bankruptcy Code on May 5, 1985.

The loan became delinquent and Parrish attempted a workout. On November 20, 1985, Parrish, Mutterer and other entities entered into an agreement to release Mutterer from the United Bank obligation. The Mutterer release was conditioned upon the bank agreeing to release Mutterer from liability on the $868,000 loan. Mutterer was in fact released from the bank obligation and Parrish entered into a second loan agreement for $187,000 with the bank. This loan agreement required Parrish to release the bank from any and all claims Parrish might have against the bank as of the date of the loan agreement. Specifically, the loan agreement provided in part:

> Borrowers shall ... and hereby releases Lender from all claims, demands, liabilities and causes of action which Borrower may have against Lender as of the date hereof.

This attempt to salvage the project did not succeed. Parrish was personally responsible to the creditors of the venture and in 1987 was forced to file for bankruptcy.

According to an affidavit filed by Parrish in opposition to the motion for summary judgment, in 1987 Parrish met George Rex at a restaurant in Tucson and for the first time discovered that the bank knew that Mutterer or the entities that he was a part of were having financial difficulties and were not current on bank loans at the time the bank recommended him as a partner.[1]

Parrish filed this action against the bank alleging fraud, negligent misrepresentation, breach of fiduciary duty, bad faith breach of contract, breach of contract, and violation of A.R.S. § 47-1203. The bank moved for summary judgment on the basis of the language in the release in the 1985 loan agreement, which the trial court granted.

## CONTENTIONS OF THE PARTIES

Parrish's theory of recovery is based on the failure of the bank to inform them of the financial condition of Mutterer when it recommended that Parrish take Mutterer

---

1. No motion to strike or objection was made to this affidavit in the trial court and we express no opinion as to its use by the trial court.

as a partner. Appellant Parrish claims the release was not effective to release this claim against the bank because: (1) the claim was unknown to Parrish at the time the release was executed; (2) the release was obtained by fraud; (3) the release was "buried" in a paragraph entitled "INDEMNITY" and is therefore ambiguous, justifying relief on the basis of unilateral mistake.

The bank contends that Parrish presented no evidence as to the financial condition of Mutterer at the time the release was executed and no evidence that the release was obtained by fraud. It further contends that the terms of the contract are plain and unambiguous and that if there was any mistake it was unilateral.

## DISCUSSION

### I. *The Release of Unknown Claims*

■■■ The rule in Arizona is that a general release can be avoided on the ground of mutual mistake. *Dansby v. Buck,* 92 Ariz. 1, 373 P.2d 1 (1962). Arizona also recognizes that a unilateral mistake induced by misrepresentations or contractual ambiguities may constitute grounds for avoiding a release. *Hendricks v. Simper,* 24 Ariz.App. 415, 539 P.2d 529 (1975); *Balmer v. Gagnon,* 19 Ariz.App. 55, 504 P.2d 1278 (1973). Parrish was represented by counsel at all times when the loan agreement containing the release was negotiated, although counsel may not have been present when Parrish actually signed the agreement, and, contrary to Parrish's assertions, the release is plain, evident and unambiguous.

■■■ The record does disclose a unilateral mistake. A unilateral mistake can be grounds for avoiding a release if at the time the release was entered into the other party knows or should have known of the mistake. See *Basin Paving, Inc. v. Port of Moses Lake,* 48 Wash.App. 180, 737 P.2d 1312 (1987).[2] And see also *Georgia–Pacific Corp. v. Levitz,* 149 Ariz. 120, 716 P.2d 1057 (App.1986); 3 A. Corbin, Contracts § 610 (1960).[3] While the record discloses that (1) Parrish knew Mutterer and Mutterer Construction Company had filed bankruptcy; (2) Parrish and Mutterer were joint venturers; (3) Parrish was negotiating with the bank because of the financial difficulties encountered by Parrish and Mutterer; and (4) Parrish had sued Mutterer and Parrish knew what his damages were, there is no evidence that Parrish knew or should have known of the bank's concealment of Mutterer's financial condition when the loan was originally made. Here there is a factual issue as to whether the bank knew or should have known that Parrish was mistaken as to the facts surrounding his damages and this unilateral mistake may be a basis for avoiding the release.

In view of our disposition of this issue, we need not discuss any other contentions asserted by Parrish.

The appellants have asked for and are entitled to their attorney's fees on appeal which shall be awarded upon their compliance with 17B A.R.S. Civil Appellate Proc. Rules, Rule 21(c).

Reversed and remanded.

ROLL, P.J., and HATHAWAY, J., concur.

2. But see *Witt v. Watkins,* 579 P.2d 1065 (Alaska 1978), wherein the Alaska court disavows the mutual mistake/unilateral mistake dichotomy and instead states the test should be
whether, at the time of signing the release, the releasor intended to discharge the disability which was subsequently discovered. Relevant to the determination of this question are all of the facts and circumstances surrounding execution of the release. Also relevant to the determination is whether a reasonable person in the position of the releasor under the circumstances then existing would have had such an intent. 579 P.2d at 1068–69.

3. A release is a contract. *Maxwell's Electric, Inc. v. Hegeman–Harris Co.,* 18 Wash.App. 358, 567 P.2d 1149 (1977); Restatement (Second) of Contracts § 284(1) and introductory note to §§ 283–285 (1987).