No. 84-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

SECURITY BANK, N.A.,

                Plaintiff and Appellant,

   -vs-

JOSEPH E. MUDD,

                Defendant and Respondent.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Herndon, Harper & Munro; James Edmiston argued,
        Billings, Montana

    For Respondent:

        Joseph E. Mudd argued, Bridger, Montana

---

                Submitted: January 21, 1985

                Decided: March 14, 1985

Filed:  MAR 14 1985

*Ethel M. Harrison*

---
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Security Bank, N.A. (Bank) brought an action in the District Court of the Thirteenth Judicial District, County of Yellowstone, to recover under a contract of guaranty executed by defendant, Joseph E. Mudd. Both Mudd and George Balback, the loan officer involved, were deposed. The case was then submitted to the court upon the depositions, the court file and the attorneys' briefs. The court held that Bank failed to notify Mudd of changes in the underlying note which materially increased defendant's risk under the guaranty, dismissed Bank's complaint and awarded Mudd costs and reasonable attorney's fees. The District Court stayed its judgment at Bank's request, pending this appeal.

Prior to the summer of 1979, Coral Bemis owned and operated an employment agency in Kalispell, Montana. That summer, with Joseph Mudd acting as her attorney, Bemis sold the Kalispell business. She accepted a $25,000 contract receivable, due in one year, September 25, 1980.

Wishing to open an employment agency in Billings, Montana, Bemis sought financing in that city, to no avail. Mudd then offered to contact an acquaintance of his, the Vice President of Security Bank, on Bemis' behalf. That contact enabled Bemis to obtain an interview with George Balback, a loan officer at Bank. Following that interview, Balback contacted Mudd to inquire about Bemis' $25,000 contract receivable. Balback apparently requested Mudd to guarantee a note for Bemis and Mudd agreed. Bank subsequently issued a note to Bemis for $16,000, with a 13½ percent interest rate. The note was secured by the $25,000 contract receivable and stock certificates of the corporation, and guaranteed by Mudd.

2

At either Mudd's or Bank's request (both say it was upon the request of the other), Bemis was not told Mudd guaranteed her note.

The contract of guaranty signed by Mudd was continuing and unconditional. It stated in relevant part:

> "FOR VALUE RECEIVED and in consideration of credit now or hereafter extended to Coral L. Bemis, . . . undersigned . . . guarantees:
>
> "(1) The payment to Bank upon demand of all sums of money now or hereafter owed by Debtor to Bank, together with interest thereon;
>
> "(2) The payment of all costs and expenses, including attorneys' fees incurred by Bank in connection with the collection of the indebtedness of Debtor.
>
> "* * *
>
> "This Guaranty shall be a continuing one and undersigned hereby expressly waives presentment, demand, protest, and notice of protest on any and all forms of such indebtedness, and also, notice of acceptance of this Guaranty, acceptance on the part of said Bank being conclusively presumed by its request for this Guaranty and receipt of the same by it. Undersigned consents to the extension of the time of payment of any obligation guaranteed by this Guaranty without notice to undersigned."

Late in 1979, Mudd helped Bemis and Veronica Sherman incorporate as C.L. Bemis, Inc. Mudd agreed to become the silent owner of 2 percent of the business, with Bemis and Sherman each owning 49 percent.

In January 1980, Bemis received an early payment of $20,700 as full satisfaction of the $25,000 Kalispell contract. Balback applied $13,500 to the $16,000 note and released the remaining money to Bemis for use in her new employment agency. Bemis did not inform Mudd of this transaction. Balback cannot recall whether he did or not. In fact, Balback cannot recall the specifics of any conversation he might have had with Mudd, but is certain he kept Mudd informed of Bemis' subsequent financial difficulties. Mudd contends he made several inquiries to Bank about the note and was told that a large portion of it had been paid in January

3

1980. He further contends Bank never told him of Bemis' financial difficulties.

On February 11, 1980, Bemis' original note had a balance of $2,500, plus accrued interest. On that date, the note was increased by $2,000 and changed by Bank and Bemis to a revolving note, with interest to accrue at 17 percent.

On March 21, 1980, Bemis executed another note in the name of C.L. Bemis, Inc., d/b/a Bryant Bureau, in the amount of $5,000. This corporate note was guaranteed by Veronica and David Sherman. The guarantors were subsequently released when Veronica paid the majority of the note and transferred the remaining $450 debt to Bemis individually.

On September 16, 1980, the note, which is the subject of this appeal, was executed by Bemis in the amount of $5,250. This note states that the money was advanced for renewal of Note No. 13384C, the original $16,000 note. The $5,250 consists of:

(1) $2,500 -- the remaining balance on the original $16,000 note;

(2) $2,000 -- an additional advance made on the original $16,000 note;

(3) $300 -- accrued interest on the original $16,000 note; and

(4) $450 -- rolled from the corporation's note.

Bemis defaulted on the $5,250 note and Bank demanded payment from Mudd. Upon Mudd's request, Bank obtained a judgment on the note against Bemis on April 8, 1981. However, Bemis then filed for bankruptcy and Bank did not recover. Defendant thereafter refused to honor the guaranty and this action was brought June 29, 1981.

In its appeal of the dismissal of its action against Mudd, Bank raises the following issues:

4

1. Whether the District Court erred in holding Bank was under a duty to notify the guarantor that (a) it had received payment upon a contract receivable, which payment possibly may have been sufficient to pay off a line of credit; and (b) it was not using that security to fully satisfy the primary obligation.

2. Whether under a contract of unconditional and continuing guaranty, a partial release of collateral by Bank was sufficient under Montana law to exonerate the guarantor from his obligation to pay the debt of the primary debtor.

Our resolution of the first issue renders issue number two moot.

The District Court, relying on Sumitomo Bank of California v. Iwasaki (Cal. 1968), 447 P.2d 956, held Bank had a duty to notify Mudd, as guarantor of the note, when it determined not to totally discharge Bemis' note upon receipt of the collateral and when it extended further credit to Bemis. Sumitomo involved numerous extensions of credit under the original note. The California Court held that each extension of credit created a new suretyship contract. Sumitomo, 447 P.2d at 964. The Court then applied a test from the Restatement of Security for when a creditor has a duty, at the outset of an obligation, to disclose facts it knows about the debtor to the surety to determine whether the surety should be released. The elements of that test are:

1. The creditor has reason to believe those facts materially increase the risk beyond that which the surety intends to assume;

2. The creditor has reason to believe the facts are unknown to the surety; and

3. The creditor has a reasonable opportunity to communicate the facts to the surety. Restatement of Security § 124(1) (1941).

5

We approve the District Court's use of the Restatement of Security's test in this instance as release of the collateral without full payment of the note similarly created a new suretyship contract. Further, we find the District Court did not abuse its discretion in determining, under the facts of this situation, that all three elements of the test were met.

There is sufficient credible evidence to support the trial judge's findings regarding the second and third elements of the test.

Regarding element number two, it is undisputed that Bank knew Bemis did not know Mudd had guaranteed her loan. Therefore, it was reasonable for the trial judge to find that creditor (Bank) had reason to believe that surety/guarantor (Mudd) did not know the collateral had not been used to totally discharge the note. There is no evidence Bank so informed Mudd and there was no reason for Bemis to tell Mudd of the partial release.

With respect to the third element, Mudd repeatedly stated in his deposition that despite numerous inquiries concerning the note, he was never told of the note's true status. Mudd remembered the details of the discussions. In contrast, Balback's statements in his deposition regarding his discussions with Mudd over the use of the collateral are rather vague and uncertain. There is sufficient evidence to support the trial judge's finding that despite numerous opportunities to do so, creditor (Bank) had never told surety/guarantor (Mudd) the true facts.

The first element of the test is not so easily resolved. No changes to the note resulted in an obligation greater than the $16,000 Mudd originally agreed to assume. Moreover, the guaranty was both unconditional and continuing. However, Mudd knew that the $25,000 contract receivable was going to

6

be used as collateral when he signed Bemis' note as guarantor. The trial judge did not abuse his discretion in finding that the contract receivable was inextricably linked with the guaranty and that Mudd had the right to assume that Bank would use the money from that contract receivable to satisfy the note, or notify him otherwise. The Bank's failure to do so materially increased Mudd's risk beyond that which he intended to assume.

The District Court therefore correctly held that Bank was under a duty to notify Mudd that it did not totally discharge Bemis' note upon receipt of the collateral. When Bank failed to so notify Mudd, he was released as guarantor of Bemis' note.

The decision of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

7