No. 88-334

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

MONTANA BANK OF LIVINGSTON,
            Plaintiff and Respondent,
      -vs-

OLD SALOON, INC., a Montana corporation,
VERNICE ANN SALYER, an individual, CHARLES
R. PEAVEY, an individual, and MELVIN A. BARBER,
an individual,
            Defendants and Respondents.

---------------------------

MELVIN A. BARBER,
            Third-Party Plaintiff and Appellant,
      -vs-

DAVID BECK And DIANE BECK,
            Third-Party Defendants and Respondents.


APPEAL FROM:   District Court of the Sixth Judicial District,
               In and for the County of Park,
               The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Knuchel & McGregor; Karl Knuchel, Livingston, Montana

      For Respondent:

            Swandal & Douglass Law Firm; Kent R. Douglass,
            Livingston, Montana


                        Submitted on Briefs:   Oct. 27, 1988

                           Decided:  December 29, 1988

Filed:

_____
            Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This appeal involves the portion of this action in which Melvin A. Barber was held liable to the Montana Bank of Livingston (Bank) as a surety on a note. The District Court for the Sixth Judicial District, Park County, granted summary judgment to the Bank. Mr. Barber appeals but we affirm.

We restate the issues as:

1. Is Mr. Barber entitled to be discharged from his surety agreement as a matter of law or equity?

2. Was summary judgment improper because genuine issues of material fact remain?

3. Was summary judgment improper as to Mr. Barber's counterclaim for breach of an implied covenant of good faith and fair dealing?

In November 1983, Vernice Salyer and Charles Peavey, on behalf of the Old Saloon, Inc. (Old Saloon), signed a $35,020 note to the Bank. At the same time, Ms. Salyer, Mr. Peavey, and Mr. Barber each individually signed surety agreements for $35,020 on the same loan. Old Saloon defaulted in payment and the Bank brought this suit for the amount owing. In answering the complaint, Mr. Barber pled accord and satisfaction based on the Bank's security interest in the Old Saloon's liquor license. Mr. Barber also crossclaimed against the other defendants Mr. Peavey, Ms. Salyer, and the Old Saloon, counterclaimed against the Bank, and made a third-party claim against the Becks. The Becks were the registered owners of the liquor license. They sold the Old Saloon to Mr. Peavey and Ms. Salyer and resumed operating it when Mr. Peavey and Ms. Salyer defaulted on their contract to purchase the establishment.

Defaults have been entered against defendants Mr. Peavey, Ms. Salyer, and the Old Saloon. The Becks have been

dismissed by stipulation.  The remaining parties, then, are Mr. Barber and the Bank.  Both filed motions for summary judgment.  The court denied Mr. Barber's motion for summary judgment after briefing and a hearing.  After briefing and a hearing on the Bank's motion for summary judgment, the court granted the motion and entered judgment in favor of the Bank. The court based its judgment on language in the surety agreement which Mr. Barber signed.  The court stated:

> the surety agreement was one that rendered defendant Barber "liable as an original obligor", and under its terms the bank could look directly to him for payment without first proceeding against the borrowers . . . [A]s Barber has no valid defense to the bank's action, his counterclaim against the bank has no merit and no trial thereon is necessary.

Mr. Barber appeals.

The Bank has moved to strike certain portions of Mr. Barber's reply brief as not within the record.  In reaching its decision, the Court has ignored those portions of the brief which are not within the record.

I

Is Mr. Barber entitled to be discharged from his surety agreement as a matter of law or equity?

Mr. Barber claims that he is protected as a surety under Montana statutes on the remedies and rights of a surety.  He states that the unconsented release of collateral by a creditor which exposes a surety to increased liability discharges the surety from the surety agreement.  The Bank relinquished its security interest in the Old Saloon's liquor license to the Becks for $6,000.  Mr. Barber estimated the value of the license at $60,000 to $70,000 and viewed his liability as a surety as secondary to that collateral.  He admits there is no written agreement to that effect, however.  Mr. Barber

3

further maintains that the Bank's failure to inform him of additional loans extended to the Old Saloon justifies his discharge from his security agreement. He cites as authority this Court's opinion in Security Bank, N.A. v. Mudd (Mont. 1985), 696 P.2d 458, 42 St.Rep. 323.

In Security Bank, defendant Mr. Mudd had guaranteed a note issued by Security Bank (Security) to a borrower. The note was secured with the borrower's contract receivable and stock certificates. The borrower's contract was paid. It would have covered the entire amount of the note. However, Security applied $13,500 of the contract receipts to the $16,000 note and released the rest to the borrower. The borrower later defaulted on a note advanced as a renewal of the original note. This Court affirmed the District Court's judgment dismissing the action against Mr. Mudd because Security had failed to notify Mr. Mudd that it had not used the money from the contract receivable to satisfy the note. The Court cited the finding that the contract receivable was inextricably linked with the guaranty. The Court approved application of a test from the Restatement of Security as to the duty of the creditor to disclose to the surety facts it knows about the debtor.

The surety agreement in the present case contained a provision in boldface type which read as follows:

> Surety has entered into this surety agreement at the request of Borrower, and for the purpose of securing to Borrower, Bank's agreement to loan money to Borrower. Surety hereby makes himself responsible for Borrower's performance of the original contract and any additional consideration. Surety agrees that Surety is liable as an original obligor, and that Surety's obligation to pay Bank under the terms of this agreement is not dependent on any default of Borrower or on any intervening contract or event of any nature whatsoever.

4

The security agreement also contained a provision waiving notice to and consent from the surety for "[a]ny deviations from, additions to, or modifications in the obligations of the original contract." Further, the agreement provided that, "Bank may . . . realize or neglect to realize upon any collateral held in connection therewith . . . without the necessity of any notice to or consent from Surety and all without affecting Surety's liability hereunder."

Mr. Barber asks us to elevate general principles of the law on sureties above the specific and clear provisions of the surety agreement he signed. Security Bank does not apply because Mr. Barber's surety agreement contained the clauses providing that the bank could release or substitute collateral without his consent. No such clause was present in the surety agreement in Security Bank. The Restatement test includes an element of increased risk to the surety. Because of the clauses set forth above, Mr. Barber took on liability for the entire amount of $35,020 from the time he signed the surety agreement. The surety agreement makes no reference to Mr. Barber's liability being secondary to the liquor license. There is no increased risk. Additionally, Mr. Barber has not provided satisfactory evidence supporting his valuation of the Old Saloon liquor license. We hold that Mr. Barber is not entitled to be discharged from his liability as an original obligor under the clear language of the surety agreement.

## II

Was summary judgment improper because genuine issues of material fact remain?

Mr. Barber asserts that several issues of material fact preclude summary judgment. These factual issues include whether he loaned money to the Old Saloon or was making an investment in it, whether he was a gratuitous surety or a principal for the Old Saloon, whether his liability was as a

primary or other surety, and whether he was discharged as a matter of law from the surety agreement.

These factual questions are irrelevant as a result of the surety agreement clauses discussed under Issue I. Mr. Barber agreed to be liable as the original obligor on the note and to forego notice and consent to release of collateral. We hold that there is no issue of material fact which precludes summary judgment.

## III

Was summary judgment improper as to Mr. Barber's counterclaim for breach of an implied covenant of good faith and fair dealing?

Mr. Barber asserts that his counterclaim's allegation of breach of the covenant of good faith and fair dealing is not susceptible to summary judgment. He cites Weinberg v. Farmers State Bank of Worden (Mont. 1988), 752 P.2d 719, 45 St.Rep. 391, as authority that banks have a fiduciary duty toward their customers. But the only connection between Mr. Barber and the Bank is the surety agreement. Weinberg does not state that there is a fiduciary duty in such a relationship. We hold that summary judgment as to the counterclaim was proper.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

6

Mr. Justice John C. Sheehy, concurring:

Melvin A. Barber is due a more extended discussion in this case, because the statutes applying to suretyship in this state seem to require a result in his favor. That he does not recover requires a deeper look at the law.

The statutes upon which Barber relies are these:

28-11-401. Surety defined. A surety is one who, at the request of another for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person or hypothecates property as security therefore.

28-11-412. Exoneration of surety. A surety is exonerated:

. . .

(2) To the extent to which he is prejudiced by any act of the of the creditor which will naturally prove injurious to the remedies of the surety or inconsistent with his rights or which lessens his security;

. . .

28-11-418. Surety entitled to benefit of security held by creditor or "cosurety." A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor or by a cosurety at the time of entering into the contract of suretyship or acquired by him afterwards, whether the surety was aware of the security or not.

Under the facts of this case, the security agreement signed by Barber to secure the promissory note to the Bank of Old Saloon, Inc., was secured by a liquor license under which Old Saloon, Inc., operated. It appears from the facts that the liquor license was actually owned by the Becks and that the Becks had a lien upon the liquor license, even though held by the Bank as security for the principal debt. Thus

when the default of Old Saloon occurred, the Bank returned the liquor license to the Becks for a payment by them to the Bank of $6,000, which was applied to Old Saloon's debt. It is Barber's contention that the liquor license was actually worth $60,000 to $70,000 which, if applicable to his surety agreement, would completely exonerate him under the statutes above recited.

The Restatement, Security, treats of the liability of the surety where the creditor has security from the principal obligor. Section 132 states:

> Where a creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor:
>
> (a) Surrenders or releases the security or
>
> (b) Willfully or negligently harms it, or
>
> (c) Fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action.

The Restatement sets out the ordinary law that applies to the duty of a creditor to protect security given by the obligor in favor of a surety. This facet of the law is not singular. The same idea is expressed in the Uniform Commercial Code. If one party to an instrument under the U.C.C. has a right of recourse against another party to the same instrument, the holder of the instrument has a duty with respect to collateral given by the principal obligor on the instrument. Thus 30-3-606 provides:

> 30-3-606. _Impairment_ _of_ _recourse_ _or_ _of_ _collateral_.
> (1) The holder discharges any party into the instrument to the extent that without such party's consent the holder:
>
> . . .

- 8 -

(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse. . .

However, the party entitled to rely on the preservation of collateral under the U.C.C. can also waive his right thereto under § 30-3-606(2), MCA:

(2) By express reservation of rights against the party with a right of recourse the holder preserves:

(a) All his rights against such party as of the time when the instrument was originally due; and

(b) The right of the party to pay the instrument as of that time; and

(c) All rights of such party to recourse against others.

Thus a party to commercial paper under the Uniform Commercial Code can expressly waive his rights to the preservation of collateral which would otherwise favor him. Courts have extended the same waiver possibility to the case of sureties. For example, it was held in American Bank of Commerce v. Covolo (New Mexico 1975), 540 P.2d 1294 that where a grantor or surety expressly and unequivocally consents to a waiver or release of his rights in the collateral, he will not be heard to complain of the failure of the creditor to perfect the security interest therein in the first instance. In Idaho, in a case where the creditor modified a sales contract by agreement with the principal debtor without the consent of the surety, it was held that the surety remained liable on his obligation of suretyship where the creditor had expressly reserved his rights:

Plaintiffs' final assertion, as a basis entitling them to summary judgment, is that its letter to A.M.R. dated October 31, 1974, acts as an "express reservation of rights" under the Uniform Commercial

Code--Commercial Paper, I.C. § 28-3-606(2). That section allows the holder of a negotiable instrument to modify the obligation of the principal debtor, without releasing a co-signor as guarantor of the instrument, by an "express reservation of rights" against the guarantor. As stated above, the Uniform Commercial Code--Commercial Paper is not applicable to the guarantee contract between A.M.R. and Heidemann. However, it appears that the "reservation of rights" doctrine contained in I.C. § 28-3-606(2) is a codification of the common law of suretyship and guaranty. "Whether the creditor releases the principal or grants him an extension of time, an expressed reservation will preserve his claim against the surety." Williston on Contracts, Contracts of Suretyship and Guaranty, § 1230, pp. 738-39 (1967). "The surety is not discharged by a purported release of or extension of time to the principal debtor if the creditor has reserved his remedies against the surety" . . .

Gebrueder Heidemann, K.P.G. v. AMR Corporation (Idaho 1984), 688 P.2d 1180, 1185, 1186.

In Montana, it is the law that the measure of a surety's obligation to the creditor is that of the principal obligor. This Court stated in Gary Hay and Greg Company Inc. v. Carlson (1927), 79 Mont. 111, 123, 255 P.2d 722:

A surety is one who at the request of another for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some acts in favor of the third person," etc. (Section 8195, revised 1921.) Such third person may enforce the obligation at any time before the contract is rescinded (Sections 74, 72, above.) Where the bond is given for the performance of a contract, the bond is made with relation to the contract and as a part of it. [Citing cases.] The two are to be construed together. [Citing cases.] The obligation of the surety is, therefore, coextensive with and measured by the promises of the principal (the contractor here) to the obligee (the state) appearing in the contract, provided proper expressions are used in the bond, and the surety by the bond binds himself only to the performance of those acts which the principal promises to perform as part of the contract. [Citing cases.]

- 10 -

In this case, in the Commercial Surety Agreement which Barber signed, he agreed that his obligation as surety to the Bank "is not dependent on any default of the borrower or on any intervening contract or event of any nature whatsoever," and that the "Bank may release any collateral given to Bank by borrower, with or without the substitution of new collateral." By that language Barber expressly agreed that the Bank could deal with the collateral offered by the principal obligor as the Bank saw fit and by that language he further waived his right against impairment of collateral held by the creditor. The District Court here was constrained to interpret the Commercial Surety Agreement as it would any other contract:

> 28-11-403. _Interpretation of contract suretyship._ In interpreting the terms of a contract in suretyship, the same rules are to be observed as in the case of other contracts.

In this case, Barber has contended he was a gratuitous surety, and as such was entitled to the benefit of the doctrine of _strictissimi juris_, that is, that as a gratuitous surety, the Commercial Surety Agreement would be construed in his favor. There appears some doubt here as to whether Barber was indeed a gratuitous surety, but even if he were, his express waiver militates against him.

> . . . [I]n the instant case, we need not adopt a rule of construction weighted against [the creditor]. In this case the suretyship agreement was drafted by the Bank . . . Viewing the language of the Guarantee Agreement most strongly for the [surety] still compels the conclusion that they assumed the risk that there could be a failure, neglect or omission to realize upon . . . the security.

> The import of that language is clear and there is simply no rule of construction that can ascribe a different meaning to those words.

- 11 -

National Bank of Washington v. Equity Investors (Wash. 1976), 546 P.2d 440, 446-447.

For the foregoing reasons therefore I concur with the majority that upholds the summary judgment in this case.

_John C. Sheehy_
Justice