MR. JUSTICE WEBER
delivered the Opinion of the Court.
This appeal involves the portion of this action in which Melvin A. Barber was held liable to the Montana Bank of Livingston (Bank) as a surety on a note. The District Court for the Sixth Judicial District, Park County, granted summary judgment to the Bank. Mr. Barber appeals but we affirm.
We restate the issues as:
1. Is Mr. Barber entitled to be discharged from his surety agreement as a matter of law or equity?
2. Was summary judgment improper because genuine issues of material fact remain?
3. Was summary judgment improper as to Mr. Barber’s counterclaim for breach of an implied covenant of good faith and fair dealing?
In November 1983, Vernice Salyer and Charles Peavey, on behalf of the Old Saloon, Inc. (Old Saloon), signed a $35,020 note to the Bank. At the same time, Ms. Salyer, Mr. Peavey, and Mr. Barber each individually signed surety agreements for $35,020 on the same loan. Old Saloon defaulted in payment and the Bank brought this suit for the amount owing. In answering the complaint, Mr. Barber pled accord and satisfaction based on the Bank’s security interest in the Old Saloon’s liquor license. Mr. Barber also crossclaimed against the other defendants Mr. Peavey, Ms. Salyer, and the Old Saloon, counterclaimed against the Bank, and made a third-party claim against the Becks. The Becks were the registered owners of the liquor license. They sold the Old Saloon to Mr. Peavey and Ms. *246 Salyer and resumed operating it when Mr. Peavey and Ms. Salyer defaulted on their contract to purchase the establishment.
Defaults have been entered against defendants Mr. Peavey, Ms. Salyer, and the Old Saloon. The Becks have been dismissed by stipulation. The remaining parties, then, are Mr. Barber and the Bank. Both filed motions for summary judgment. The court denied Mr. Barber’s motion for summary judgment after briefing and a hearing. After briefing and a hearing on the Bank’s motion for summary judgment, the court granted the motion and entered judgment in favor of the Bank. The court based its judgment on language in the surety agreement which Mr. Barber signed. The court stated:
“the surety agreement was one that rendered defendant Barber ‘liable as an original obligor’, and under its terms the bank could look directly to him for payment without first proceeding against the borrowers . . . [A]s Barber has no valid defense to the bank’s action, his counterclaim against the bank has no merit and no trial thereon is necessary.”
Mr. Barber appeals.
The Bank has moved to strike certain portions of Mr. Barber’s reply brief as not within the record. In reaching its decision, the Court has ignored those portions of the brief which are not within the record.
I.
Is Mr. Barber entitled to be discharged from his surety agreement as a matter of law or equity?
Mr. Barber claims that he is protected as a surety under Montana statutes on the remedies and rights of a surety. He states that the unconsented release of collateral by a creditor which exposes a surety to increased liability discharges the surety from the surety agreement. The Bank relinquished its security interest in the Old Saloon’s liquor license to the Becks for $6,000. Mr. Barber estimated the value of the license at $60,000 to $70,000 and viewed his liability as a surety as secondary to that collateral. He admits there is no written agreement to that effect, however. Mr. Barber further maintains that the Bank’s failure to inform him of additional loans extended to the Old Saloon justifies his discharge from his security agreement. He cites as authority this Court’s opinion in Security Bank, N.A. v. Mudd (1985), 215 Mont. 242, 696 P.2d 458, 42 St.Rep. 323.
*247 In Security Bank, defendant Mr. Mudd had guaranteed a note issued by Security Bank (Security) to a borrower. The note was secured with the borrower’s contract receivable and stock certificates. The borrower’s contract was paid. It would have covered the entire amount of the note. However, Security applied $13,500 of the contract receipts to the $16,000 note and released the rest to the borrower. The borrower later defaulted on a note advanced as a renewal of the original note. This Court affirmed the District Court’s judgment dismissing the action against Mr. Mudd because Security had failed to notify Mr. Mudd that it had not used the money from the contract receivable to satisfy the note. The Court cited the finding that the contract receivable was inextricably linked with the guaranty. The Court approved application of a test from the Restatement of Security as to the duty of the creditor to disclose to the surety facts it knows about the debtor.
The surety agreement in the present case contained a provision in boldface type which read as follows:
“Surety has entered into this surety agreement at the request of Borrower, and for the purpose of securing to Borrower, Bank’s agreement to loan money to Borrower. Surety hereby makes himself responsible for Borrower’s performance of the original contract and any additional consideration. Surety agrees that Surety is liable as an original obligor, and that Surety’s obligation to pay Bank under the terms of this agreement is not dependent on any default of Borrower or on any intervening contract or event of any nature whatsoever.”
The security agreement also contained a provision waiving notice to and consent from the surety for “[a]ny deviations from, additions to, or modifications in the obligations of the original contract.” Further, the agreement provided that, “Bank may . . . realize or neglect to realize upon any collateral held in connection therewith . . . without the necessity of any notice to or consent from Surety and all without affecting Surety’s liability hereunder.”
Mr. Barber asks us to elevate general principles of the law on sureties above the specific and clear provisions of the surety agreement he signed. Security Bank does not apply because Mr. Barber’s surety agreement contained the clauses providing that the bank could release or substitute collateral without his consent. No such clause was present in the surety agreement in Security Bank. The Restatement test includes an element of increased risk to the surety. Because of the clauses set forth above, Mr. Barber took on liability *248 for the entire amount of $35,020 from the time he signed the surety agreement. The surety agreement makes no reference to Mr. Barber’s liability being secondary to the liquor license. There is no increased risk. Additionally, Mr. Barber has not provided satisfactory evidence supporting his valuation of the Old Saloon liquor license. We hold that Mr. Barber is not entitled to be discharged from his liability as an original obligor under the clear languages of the surety agreement.
II
Was summary judgment improper because genuine issues of material fact remain?
Mr. Barber asserts that several issues of material fact preclude summary judgment. These factual issues include whether he loaned money to the Old Saloon or was making an investment in it, whether he was a gratuitous surety or a principal for the Old Saloon, whether his liability was as a primary or other surety, and whether he was discharged as a matter of law from the surety agreement.
These factual questions are irrelevant as a result of the surety agreement clauses discussed under Issue I. Mr. Barber agreed to be liable as the original obligor on the note and to forego notice and consent to release of collateral. We hold that there is no issue of material fact which precludes summary judgment.
III
Was summary judgment improper as to Mr. Barber’s counterclaim for breach of implied covenant of good faith and fair dealing?
Mr. Barber asserts that his counterclaim’s allegation of breach of covenant of good faith and fair dealing is not susceptible to summary judgment. He cites Weinberg v. Farmers State Bank of Worden (Mont. 1988), [231 Mont. 10,] 752 P.2d 719, 45 St.Rep. 391, as authority that banks have a fiduciary duty toward their customers. But the only connection between Mr. Barber and the Bank is the surety agreement. Weinberg does not state that there is a fiduciary duty in such a relationship. We hold that summary judgment as to the counterclaim was proper.
Affirmed.
*249 MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON and HUNT concur.